# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELVIN MERCADO,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)  Civil No. 04-11653-PBS<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF MANUAL FILING WITH CLERK'S OFFICE

Notice is hereby given that the documents, exhibits or attachments listed below have been manually filed with the Court under seal:

1. Exhibit A of the Memorandum in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

The original documents are maintained in the case file in the Clerk's Office.

Dated: December 7, 2005     Respectfully submitted,

             ELVIN MERCADO

             By his attorneys,

             **/s/ Roberto M. Braceras**
             Roberto M. Braceras  (BBO# 566816)
             GOODWIN PROCTER LLP
             Exchange Place
             Boston, MA 02109-2881
             (617) 570-1000

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELVIN MERCADO,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 04-11653-PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF MELISSA COTTO IN SUPPORT OF MOTION UNDER 28 U.S.C. §
2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

I, Melissa Cotto, hereby depose and state as follows:

1. Elving Mercado is my ex-boyfriend.

2. We dated from approximately August 1996 until November 2003.

3. During this time, we had a daughter, Chyanna Mercado, who will be eight years

old on January 15, 2006. I live with and take care of Chyanna in Lawrence, Massachusetts.

4. Chyanna visits her father nearly every Sunday at FMC Devens in Ayer,

Massachusetts, which is approximately a thirty-minute drive from Lawrence.

5. I attended Elving's sentencing hearing in 02-CR-10259-PBS at the John Joseph

Moakley U.S. Courthouse in Boston, Massachusetts, on July 21, 2003.

6. I personally hired Steven Rappaport to represent Elving as counsel in 02-CR-

10259-PBS.

7.      On the morning of July 21, 2003, before Elving's sentencing hearing had begun, I tried to speak with Mr. Rappaport, but he ignored my questions.

8.      In the afternoon of July 21, 2003, immediately after the first day of the sentencing hearing, Mr. Rappaport discussed the case with me, Elving's mother (Lourdes Schmidt), Elving's stepfather (Luis Cotto), and Elving's sister (Lourdes Jeanette Meran) in the hallway of the courthouse. Mr. Rappaport told us during this discussion that he was sure that the Court would give Elving a maximum sentence of only five years. Mr. Rappaport's demeanor was upbeat and cheerful when he also told us that we did not need to worry because "It looks good . . . looks like he will get five years . . . . Elving will see his daughter soon."

9.      Based upon these assurances, I was confident that Elving would receive a maximum sentence of only five years. I therefore decided not to attend the second day of the sentencing hearing on July 22, 2003, and to return to work instead.

10.     Following the sentencing hearing, on the night of July 22, 2003, I spoke with Elving on the phone about his prison sentence. He told me that Mr. Rappaport had always assured him that he would receive a maximum sentence of only five years, and that he was therefore shocked when the Court imposed a sentence of 188 months.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 2, 2005.

_Melissa Cotto_
Melissa Cotto

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELVIN MERCADO,<br><br>                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 04-11653-PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF ELVING MERCADO IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

I, Elving Mercado, hereby depose and state as follows:

1.    Steven Rappaport represented me as counsel in 02-CR-10259-PBS.

2.    Throughout the proceeding, which included a Rule 11 hearing on April 14, 2003, and a sentencing hearing on July 21 and 22, 2003, counsel told me and others that, if I pleaded guilty and cooperated with the government, the maximum sentence I would face would be five years.

3.    Counsel first assured me that he had reached an agreement with the government, whereby it would recommend a maximum sentence of five years if I pleaded guilty and cooperated, in December 2002 or January 2003, during one of our first meetings at MCI Plymouth, where I was incarcerated at the time.

4.     Counsel's assurances regarding the five-year maximum deal he had reached with the government continued leading up to the Rule 11 hearing on April 14, 2003.

5.     Prior to the Rule 11 hearing, I met with counsel, Assistant U.S. Attorney Peter Levitt, FBI Special Agent Mark Karangekis, and another young FBI agent whose name I cannot recall, to discuss my previous criminal activity and my knowledge of the criminal activity of others. The meeting lasted approximately one hour and one-half.

6.     After this meeting, I met with counsel alone for approximately two minutes to "discuss" and sign the plea agreement that the U.S. Attorney's office had proposed. Counsel did not explain to me the contents of the plea agreement at any level, he did not give me an opinion of probable outcomes, nor did he advise me of the strengths and weaknesses of available alternatives. Though I had never read it and he had not discussed it with me during this meeting or at any time before this meeting, counsel strongly encouraged me to sign the plea agreement. He assured me that everything would turn out "like we talked about," which I understood to mean that I would be receiving a maximum sentence of five years based upon the deal he had struck with the U.S. Attorney's office.

7.     During the Rule 11 hearing, I twice expressed my understanding that the Court did not need to follow the plea agreement. However, I thought this was merely a formality since counsel never suggested to me that there was any possibility that my sentence would be longer than five years.

8.     During the Rule 11 hearing, I also confirmed that no one had promised me anything to get me to plead guilty. Again, I thought this was a perfunctory exercise, and that if I divulged the assurances counsel had made to me regarding the five-year deal he had negotiated with the U.S. Attorney's office, it would put the five-year deal at risk.

9.  After the Rule 11 hearing, counsel mailed me a copy of the plea agreement. I read the agreement and did my best to understand it, but I was not able to understand the agreement completely.

10.  The next time I saw counsel was July 21, 2003, the first day of the sentencing hearing. At that time, I expressed my concern that, based upon what I had learned on my own about the contents and meaning of the plea agreement, the sentence I would receive under the plea agreement might be significantly longer than the five-year sentence that he had always assured me. I also expressed my concern that, according to the plea agreement, I had agreed to waive my right to appeal or to attack my sentence collaterally. I told counsel that I did not want to waive my right to appeal or to attack my sentence collaterally. He brushed aside my concerns and again told me not to worry.

11.  Counsel made the same assurances regarding a five-year maximum sentence to my mother (Lourdes Schmidt), stepfather (Luis Cotto), girlfriend (Melissa Cotto), and sister (Jeannette Meran) at the courthouse on July 21, 2003, after the first day of the sentencing hearing.

12.  In light of counsel's frequent and consistent assurances that I would receive a maximum sentence of five years, I was not aware of the possibility of a longer sentence at the time that I pleaded guilty or during my sentencing.

13.  I would not have pleaded guilty if I had known before my sentencing hearing that, by doing so, I faced a sentence of fifteen years or more. I pleaded guilty based upon my understanding that I would be sentenced to a maximum time of five years in light of the government's agreement to recommend such a sentence to the Court.

14.     Immediately after the hearing on July 22, 2003, counsel met with me. I expressed my surprise and dismay that I had been sentenced to longer than five years. I also expressed my desire to appeal my sentence and to exhaust all other available remedies. Counsel nevertheless failed to file a notice of appeal on my behalf. Moreover, he did not advise me, at that time or at any other time, that I needed to file a notice of appeal within ten days in order to preserve my right to appeal. To the contrary, counsel told me that I had one year in which to "appeal" my sentence. He told me that I could appeal on the ground of ineffective assistance of counsel based upon his failure to explain a lot of things to me throughout the proceeding, including the potential length of my sentence under the plea agreement. He told me that he would explain what he meant if I called him from prison.

15.     Approximately three months later, I called counsel from FMC Devens and asked him what he meant when he said on July 22, 2003, that he had not explained a lot of things to me throughout my case. He acknowledged during this phone call that, immediately following the sentencing hearing, he had in fact recommended that I file an ineffective assistance of counsel appeal based upon his failure to explain certain things to me, including the potential length of my sentence. He told me that he would look through his file and that I should call him back in one month.

16.     I called counsel back in approximately one month like he had asked and again inquired about his earlier suggestion that I file an ineffective assistance of counsel claim based upon his failure to explain certain things to me throughout my case. On this occasion, however, counsel contradicted his previous statements to me and claimed that there was nothing that he had not explained to me.

17.    I have tried diligently to obtain the tapes of these telephone conversations with counsel.  These tapes would reveal that counsel acknowledged that, at the conclusion of my sentencing hearing on July 22, 2003, he had recommended that I file an ineffective assistance of counsel appeal based upon his failure to explain certain things to me during my case, and in particular the potential length of my sentence.  Unfortunately, I have been informed that FMC Devens has destroyed these tapes pursuant to its six-month retention policy.

18.    I have a seven-year-old daughter named Chyanna Mercado.  She lives in Lawrence, Massachusetts with Melissa Cotto, her mother and my ex-girlfriend.  My daughter comes to visit me nearly every Sunday at FMC Devens.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 1, 2005.


Elving Mercado
Elving Mercado


LIBA/1652629.1

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff      )
                               )
        -VS-                   ) Criminal No. 02-10259-PBS
                               ) Pages 1 - 31
ELVIN MERCADO,                 )
                               )
                Defendant      )

**RULE 11 HEARING**

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

    PETER LEVITT, ESQ., Assistant United States Attorney,
Office of the United States Attorney, 1 Courthouse Way,
Boston, Massachusetts, 02210, for the Plaintiff.

    STEVEN J. RAPPAPORT, ESQ., Rappaport & Delaney,
228 Central Street, Lowell, Massachusetts, 01852, for the
Defendant.

                        United States District Court
                        1 Courthouse Way, Courtroom 13
                        Boston, Massachusetts
                        April 14, 2003, 4:00 p.m.

LEE A. MARZILLI
CERTIFIED REALTIME REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

1              P R O C E E D I N G S

2              THE CLERK:  The case of the United States Vs. Elvin

3    Mercado, Criminal Action No. 02-10259, will now be heard

4    before this Court.  Will counsel please identify themselves

5    for the record.

6              MR. LEVITT:  Good afternoon, your Honor.  Peter

7    Levitt on behalf of the United States.

8              THE COURT:  Good afternoon.

9              MR. RAPPAPORT:  Steven Rappaport on behalf of Elvin

10   Mercado.

11             THE COURT:  Why are we here today, Mr. Rappaport?

12             MR. RAPPAPORT:  A change of plea.

13             THE COURT:  All right.  Mr. Alba?

14             THE CLERK:  Will the defendant please stand.

15   Mr. Elvin Mercado, you have previously pled "not guilty" to

16   Count 1 of an indictment charging you with conspiracy to

17   distribute heroin, in violation of Section 21, United States

18   Code, Section 846, and to Counts 2, 3, 5 through 10, and 12

19   of an indictment charging you with distribution of heroin, in

20   violation of Section 21, United States Code,

21   Section 841(a)(1).  Do you now wish to change your plea?

22             THE DEFENDANT:  Yes.

23             THE COURT:  What say you to Counts 1, 2, 3, 5

24   through 10, and 12 of the indictment, are you guilty or not

25   guilty?

1          THE DEFENDANT:  Guilty.

2          THE CLERK:  Thank you.  Please take the witness

3    stand, sir.  Counsel, you can accompany him.

4          MR. RAPPAPORT:  Thank you.

5          (Defendant duly sworn.)

6          THE COURT:  Good afternoon.

7          THE DEFENDANT:  Good afternoon.

8          THE COURT:  Do you understand that the reason why I

9    encourage your attorney to be right next to you is so that at

10   any point you can ask him a question?  Do you understand

11   that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Put your hand over the mike if you want

14   to talk to your lawyer, okay?

15         THE WITNESS:  Okay.

16         THE COURT:  And the other thing is that at any

17   point you wish, you can stop this and say, "I don't want to

18   do this, I want to go forward to court."  Do you understand

19   that?

20         THE DEFENDANT:  Okay.

21         THE COURT:  Do you understand that you're now under

22   oath, and if you answer any of my questions falsely, your

23   answers may later be used against you in another proceeding

24   for perjury for making a false statement?

25         THE DEFENDANT:  Yes.

1          THE COURT:  What's your full name?

2          THE DEFENDANT:  Elvin Mercado.

3          THE COURT:  Do you have any aliases?

4          THE DEFENDANT:  I got arrested.  I have an alias

5    one time when I was 17 years old.

6          THE COURT:  What was it?

7          THE DEFENDANT:  Richard Cruz.

8          THE COURT:  Cruz?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Are you also known as Chino?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Are there any other nicknames like

13    that?

14          THE DEFENDANT:  No.

15          THE COURT:  How old are you?

16          THE DEFENDANT:  I'm twenty-six.

17          THE COURT:  Why don't you pull that mike in.  I'm

18    having a little trouble hearing.  How old?

19          THE DEFENDANT:  Twenty-six.

20          THE COURT:  Twenty-six years old.  How far did you

21    go in school?

22          THE DEFENDANT:  To the junior.

23          THE COURT:  Year of high school?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Where did you go to high school?

1          THE DEFENDANT:  Lawrence High.

2          THE COURT:  Can you read and write English?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And did you read the plea agreement?

5          THE DEFENDANT:  Yes, I did.

6          THE COURT:  And you read the indictment against

7    you?

8          THE DEFENDANT:  Yes, I did.

9          THE COURT:  And that handwriting in fact is yours

10   on the plea agreement?

11         THE DEFENDANT:  Yes, it is.

12         THE COURT:  And did you go over that with your

13   attorney?

14         THE DEFENDANT:  Yes, I did.

15         THE COURT:  Have you ever been treated for any

16   mental illness or addiction to narcotic drugs?

17         THE DEFENDANT:  Yes, I did.  Yes, I have.

18         THE COURT:  Tell me about it.

19         THE DEFENDANT:  I've been -- I have done drugs

20   since I was fourteen, thirteen years old, and I've been to

21   drug programs.  I've been to a mental health facilities.

22         THE COURT:  Let's start with the drug addiction.

23   When was the last time you had a program for any drug

24   addiction?

25         THE DEFENDANT:  The last time I was in a drug

1  program, I came out of prison, jail, and I was out for

2  30 days.  And I ended picking up another case, and from that

3  case, I went to jail for a couple of months.  And I went from

4  Lawrence District Court to a Christian drug program for six

5  months.

6          THE COURT:  Do you currently have an addiction?

7          THE DEFENDANT:  No.

8          THE COURT:  Are you currently going through any

9  kind of withdrawal right now or anything?

10          THE DEFENDANT:  No.

11          THE COURT:  Do you feel okay?

12          THE DEFENDANT:  Excuse me?

13          THE COURT:  Do you feel all right?

14          THE DEFENDANT:  Yes, I feel all right.

15          THE COURT:  All right, what about mental health

16  treatment?

17          THE DEFENDANT:  I have been an in-house patient

18  when I was in the sixth grade for attempted suicide, and I

19  did six -- uhm, two months in the Waltham Children's

20  Hospital.

21          THE COURT:  All right.  And do you have any drugs

22  right now that you're taking that are prescribed by a doctor

23  for depression or anything like that?

24          THE DEFENDANT:  No.

25          THE COURT:  Are you feeling depressed or suicidal

1   in the jail now?

2           THE DEFENDANT:  No.

3           THE COURT:  Are you currently under the influence

4   of any drugs or medications other than for mental health

5   purposes?

6           THE DEFENDANT:  No.

7           THE COURT:  Have you been satisfied with the

8   representation of your attorney?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you feel in any way that he's

11  pressured you into pleading guilty?

12          THE DEFENDANT:  No.

13          THE COURT:  Has he answered all your questions?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Has he gone through the indictment and

16  the plea agreement with you?

17          THE DEFENDANT:  Yes, he has.

18          THE COURT:  Has anyone made any representations to

19  you about what my sentence will be?

20          THE DEFENDANT:  No.

21          THE COURT:  Do you understand I don't have to

22  follow the plea agreement?

23          THE DEFENDANT:  Uh-huh.

24          THE COURT:  Is that "yes"?

25          THE DEFENDANT:  Yes.

1    THE COURT:  Has anyone made any promises or threats

2    to you to get you to plead guilty apart from the promises in

3    the plea agreement?

4    THE DEFENDANT:  No.

5    THE COURT:  Do you understand that by pleading

6    guilty to a felony offense, you will be deprived of certain

7    civil rights, such as the right to vote, to hold public

8    office, to serve on a jury, and to possess firearms?

9    THE DEFENDANT:  Yes.

10    THE COURT:  Are you a citizen?

11    THE DEFENDANT:  Yes, I am.

12    THE COURT:  Will the government state the penalties

13    to be imposed.

14    MR. LEVITT:  Yes, your Honor.  Your Honor, under

15    the plea agreement, the parties have agreed to argue at

16    sentencing the issue of the amount of drugs involved

17    attributable to the defendant, so that the maximum penalties

18    has something to do with that finding.

19    With respect to Count 1, the conspiracy count, if

20    the Court finds that at least 100 grams of heroin are

21    attributable to the defendant, he faces a maximum term of

22    imprisonment of life and a ten-year mandatory minimum, a fine

23    of up to $4 million, at least an eight-year term of

24    supervised release and a maximum of life, and a $100 special

25    assessment.

1          If the Court finds that less than 100 grams of

2     heroin are attributable to the defendant with respect to

3     Count 1, the defendant faces a maximum term of imprisonment

4     of 30 years, a fine of up to $2 million, at least a six-year

5     term of supervised release and a maximum of life, and a $100

6     special assessment.

7          With respect to --

8          THE COURT:  So under either --

9          MR. RAPPAPORT:  No mandatory minimum.  If the Court

10    were to determine less than 100 grams attributable to

11    Mr. Mercado, there would be no mandatory minimum.

12         THE COURT:  So under either theory, is the

13    statutory maximum life?

14         MR. LEVITT:  No.  Under the latter theory, if it's

15    under 100 grams, the statutory maximum is 30 years.

16         THE COURT:  Okay, but let's walk through for me for

17    a second Apprendi.  If he's not going to plead to a drug

18    amount and it changes the statutory maximum, how do I do

19    this?

20         MR. LEVITT:  In the plea agreement, the defendant

21    agrees to waive any arguments he might have under Apprendi or

22    under Section 2D1.1 of the Guidelines with respect to drug

23    amount, so --

24         THE COURT:  Where is that?

25         MR. LEVITT:  That's on Page 3 at the top.

1        THE COURT:  Have you talked to him about the fact

2   that he's entitled to a jury verdict on the issue of drug

3   amount?

4        MR. RAPPAPORT:  Yes, your Honor, but --

5        THE COURT:  I think.

6        MR. RAPPAPORT:  Well, he would be entitled to a

7   jury verdict, but, your Honor, I personally, having dealt

8   with the probable cause issue earlier in this case, I think

9   it's pretty clear, and that's why my client had asked me, and

10  I totally agree with him, that with regard to drug amount, we

11  should allow the Court to make this determination at

12  sentencing.  I personally think it's clear that it's not

13  going to be over 100 grams, but --

14       THE COURT:  Well, I don't know.  I mean, I'm seeing

15  you for the first time.  Let me just ask, do you understand

16  that you have a right to a jury trial on that issue?

17       THE DEFENDANT:  Yes, I do.

18       THE COURT:  And do you understand that I'll listen

19  to the evidence, we'll hold an evidentiary hearing, there

20  will be witnesses that you'd want to subpoena?  I mean, we'll

21  go through a full-blown hearing, but it will be me, not a

22  jury, that makes that decision.  Do you understand that?

23       THE DEFENDANT:  Yes.

24       THE COURT:  And also do you understand that if I

25  decide it, I decide it under a standard that we call

1    "preponderance of the evidence," which means the government

2    has to prove that it is more likely true than not true

3    that -- what are you claiming, 300?

4              MR. LEVITT:  100 grams.

5              THE COURT:  -- more likely true than not true that

6    the government's position is correct?  Whereas, if you went

7    to trial before a jury, it would be proof beyond a reasonable

8    doubt.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you draw some other distinction I'm

11   not thinking of right now?

12             MR. LEVITT:  No, your Honor.  I would point out

13   that because the defendant is a career offender, the issues

14   on sentencing depend more on that than drug weight.

15             MR. RAPPAPORT:  There were some practical

16   considerations here, your Honor.  Certainly early on in this

17   case, if I were to look at the case and say, "Well, maybe I

18   should try this case," I felt that there were issues I might

19   be able to win on.  But in prevailing on those issues, I

20   wouldn't necessarily be helping my client in terms of

21   eventual sentencing, and a lot of that has to do with his

22   career offender status.

23             THE COURT:  Well, given the career offender status,

24   assuming that I find it's --

25             MR. RAPPAPORT:  The difference between 30 years and

1    the life is what -- it's a two-point difference.

2            MR. LEVITT:  There is a provision in the plea

3    agreement that spells this out, your Honor.  It's on Page 2.

4    It's 3-A.  It deals with the base offense level.

5    Essentially, under the career offender provisions, if the

6    Court finds that the defendant is responsible for at least

7    100 grams of heroin, his base offense level would be 34 and

8    his criminal history category would be 6.  If the Court finds

9    that the defendant is responsible for less than 100 grams,

10   his base offense level would be 32 and his criminal history

11   category would be 6.

12           THE COURT:  So it makes a difference, but it's not

13   that dramatic.

14           MR. LEVITT:  It's not as dramatic as it might

15   otherwise be.

16           THE COURT:  But, in any event, do you understand

17   you'd be entitled to a jury trial and proof beyond a

18   reasonable doubt on drug amount, and you're giving that up?

19           THE DEFENDANT:  Yes.

20           THE COURT:  All right.  So do you plead guilty that

21   it's at least. . .  Is there any amount --

22           MR. RAPPAPORT:  No, no.

23           MR. LEVITT:  There's no maximum minimum.

24           THE COURT:  There's no maximum minimum amount, all

25   right, so we'll go past that.

1          MR. LEVITT:  I hadn't --

2          THE COURT:  All right, go ahead.

3          MR. LEVITT:  The maximum is on the remaining

4    counts, which are Counts 2, 3, 5, 6, 7, 8, 9, 10 and 12.

5    Pursuant to the plea agreement, the parties have agreed that

6    Counts 4 and 11 be dismissed.  But with respect to those

7    counts, the maximum term of imprisonment is 30 years.  There

8    is a maximum fine of $2 million, at least a six-year term of

9    supervised release and a maximum of life, and a $100 special

10   assessment.

11         THE COURT:  All right, and what about the

12   forfeiture?

13         MR. LEVITT:  There is also a forfeiture count.

14         THE COURT:  What are you looking for?

15         MR. LEVITT:  I can't recall if we've listed any

16   specific property in the indictment.  I actually gave my copy

17   of the indictment to Mr. --

18         MR. RAPPAPORT:  I don't think so.

19         MR. LEVITT:  At this point we have not identified

20   any specific property.  We may before sentencing, but that's

21   just a question of what we can identify at that point.

22         THE COURT:  So at some point he's got to plead to

23   something.

24         MR. LEVITT:  Well, I think, your Honor, he's

25   pleading to the general forfeiture counts.  If there is an

1    issue as to whether specific property that is subsequently

2    identified is actually forfeitable, I think that would be

3    open at sentencing.

4         MR. RAPPAPORT:  We can leave that open for

5    sentencing.

6         THE COURT:  Well, except let me just do this.  I

7    don't think I'm going to take a plea on a criminal

8    forfeiture.  Usually there's a car, there's a house, there's

9    something, and everybody agrees, yes, that was purchased with

10   drug proceeds.  I don't think I can take a plea and be

11   strapped.

12        MR. LEVITT:  Well, I mean, I think you can --

13        THE COURT:  I'm not going to take the plea on the

14   criminal forfeiture, but I'm going to leave that open.  And

15   if you find a piece of property that you want to go for, then

16   I'll take the plea at the moment, or not.

17        MR. LEVITT:  That's fine.

18        THE COURT:  So with respect to -- let me go through

19   the constitutional rights that you're giving up by pleading

20   guilty.  Do you understand you have a right to plead

21   "not guilty" to these offenses?

22        THE DEFENDANT:  Yes, I do.

23        THE COURT:  Do you understand that you have a right

24   to a trial by jury --

25        THE DEFENDANT:  Yes.

1    THE COURT:  -- concerning each one?  Do you

2  understand that the jury would have to decide unanimously

3  beyond a reasonable doubt that you're guilty on each and

4  every one of the charges?

5    THE DEFENDANT:  Yes.

6    THE COURT:  Do you understand that you are giving

7  up the presumption of innocence?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Do you understand you don't have to

10  introduce any evidence at all?

11    THE DEFENDANT:  Yes.

12    THE COURT:  The burden is always on the

13  government.  Do you understand that?

14    THE DEFENDANT:  Uh-huh.

15    THE COURT:  Do you understand that you have the

16  privilege against self-incrimination, which means you don't

17  have to testify against yourself?

18    THE DEFENDANT:  Yes.

19    THE COURT:  On the other hand, do you understand

20  you could testify on your own behalf if you wanted to?

21    THE DEFENDANT:  Yes.

22    THE COURT:  Do you understand you could subpoena

23  witnesses on your own behalf and cross-examine witnesses

24  against you?

25    THE DEFENDANT:  Yes.

1    THE COURT:  Knowing all these very important

2  issues, do you still want to plead guilty?

3    THE DEFENDANT:  Yes.

4    THE COURT:  You have to force the government to

5  prove beyond a reasonable doubt and get a unanimous jury

6  verdict.  Do you know that?

7    THE DEFENDANT:  Yes.

8    THE COURT:  Do you understand that I'm not required

9  to follow the plea agreement?  I mentioned that earlier.  Do

10  you understand that?

11    THE DEFENDANT:  Yes.

12    THE COURT:  And I will send this down to the

13  Probation Department, which will make a recommendation under

14  the Sentencing Guidelines as to what your sentence should

15  be.  Do you understand that?

16    THE DEFENDANT:  Yes.

17    THE COURT:  And we'll hold a hearing at that point,

18  and I'll impose a sentence after I hear your attorney's

19  arguments and the government's arguments.  Do you understand

20  that?

21    THE DEFENDANT:  Yes.

22    THE COURT:  And to the extent that I impose a

23  sentence that's harsher than the plea agreement, you have a

24  right to appeal.  Do you understand?

25    THE DEFENDANT:  Yes.

1    THE COURT:  Or simply because you disagree with my

2    sentence does not at that point give you the right to

3    withdraw your guilty plea.  Do you understand that?

4    THE DEFENDANT:  Yes.

5    THE COURT:  I'm going to ask the government to go

6    through what it would prove.  Now, listen carefully.  I'm

7    going to ask you if you agree.

8    MR. LEVITT:  Your Honor, with respect to Count 1 of

9    the indictment which alleges a conspiracy to distribute

10   heroin, the government would show that the defendant was a

11   heroin trafficker in the Lawrence, Massachusetts, area.

12   Specifically, the government would show that by in or about

13   June, 2001, the defendant entered into an agreement, whether

14   explicit or implicit, with Jason Brillon and others to

15   distribute heroin.  The government would show that Jason

16   Brillon was one of the defendant's distributors of heroin.

17   The government would show that during the course of

18   the investigation, a cooperating witness made at least nine

19   hand-to-hand purchases of heroin from the defendant, either

20   directly or through one of the defendant's distributors such

21   as Jason Brillon.  The government would show that

22   approximately 20 grams of heroin were purchased from the

23   defendant directly in this fashion.  The government would

24   also show that the conspiracy, the overall conspiracy,

25   involved at least 100 grams of heroin.

1          Each of the purchases of heroin that are enumerated

2    in the indictment, Counts 1 through 3, 5 through 10, and 12,

3    were set up generally through one or more consensually

4    recorded telephone calls between the cooperating witness and

5    the defendant.  Each of the buys was surveilled by law

6    enforcement agents and tape-recorded.  For example, with

7    respect to Count 9, on February 19, 2002, a cooperating

8    witness bought 1.1 grams of heroin from the defendant and

9    Jason Brillon.

10          THE COURT:  Which one is that?

11          MR. LEVITT:  This is Count 9.

12          THE COURT:  You know, can we go in order?

13          MR. LEVITT:  Sure.  Your Honor, what I was going to

14   do was simply summarize the overall counts and then give a

15   specific example of going through Count 9, but I can go

16   through each one generally and then give a more detailed --

17          THE COURT:  Do it count by count so I make sure

18   that people aren't just blanket pleading, that they focus on

19   each count, because each one counts.

20          MR. LEVITT:  That's fine.  I gave my copy to --

21          THE COURT:  Yes, there you go.

22          MR. LEVITT:  With respect to Count 2, the

23   government would show that on or about January 24, 2002 --

24          THE COURT:  Do you have it right there in front of

25   you?

1        MR. RAPPAPORT:  Yes, we have the indictment in

2   front of us.

3        MR. LEVITT:  -- in Lawrence, a cooperating witness

4   made a consensually recorded call to the defendant and

5   arranged to purchase approximately 1 gram of heroin from the

6   defendant.  The cooperating witness went to the defendant's

7   home by agreement at 158 Butler Street in Lawrence, where the

8   defendant sold the cooperating witness approximately 1 gram

9   of heroin.  The cooperating witness wore a tape recorder

10  during this transaction, and the conversations concerning

11  that sale were recorded.

12       THE COURT:  You have it right in front of you.  Do

13  you plead guilty?  Do you disagree with anything about

14  Count 2?

15       THE DEFENDANT:  No.

16       THE COURT:  Do you plead guilty to Count 2?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Count 3.

19       MR. LEVITT:  With respect to Count 3, the

20  government would show that on or about January 28, 2002, a

21  cooperating witness again made a consensually recorded call

22  to the defendant for the purpose of making another buy of

23  heroin.  The cooperating witness asked to buy approximately

24  1 gram of heroin.  The defendant agreed.  The cooperating

25  witness again met the defendant at 158 Butler Street and

1    again purchased 1 gram of heroin from the defendant.

2            THE COURT:  And do you disagree with that?

3            THE DEFENDANT:  No.

4            THE COURT:  Do you plead guilty that on January 28,

5    2002, in Lawrence, you did distribute heroin?

6            THE DEFENDANT:  Yes.

7            THE COURT:  All right, moving to Count 4.

8            MR. LEVITT:  Count 4 is one of the counts that the

9    government is going to dismiss pursuant to the plea

10   agreement.

11           THE COURT:  Okay.

12           MR. LEVITT:  With respect to Count 5, were the case

13   to go to trial, the government would prove that on or about

14   January 30, 2002, a cooperating witness again made a

15   consensually recorded call to the defendant for the purpose

16   of buying approximately 1 gram of heroin.  The parties agreed

17   to meet at 158 Butler Street, where the defendant sold the

18   cooperating witness approximately 1 gram of heroin.

19           THE COURT:  Do you disagree with that?

20           THE DEFENDANT:  No.

21           THE COURT:  Do you plead guilty to Count 5 that on

22   or about January 30, 2002, in Lawrence, you did distribute

23   heroin?

24           THE DEFENDANT:  Yes.

25           MR. LEVITT:  With respect to Count 6, the

1    government would prove that on or about February 4, 2002, the

2    cooperating witness made a consensually recorded call to the

3    defendant, asked the defendant if he could purchase

4    approximately 1 gram of heroin.  The defendant agreed.  They

5    agreed to meet at 158 Butler Street.  Under surveillance, the

6    cooperating witness went to 158 Butler Street, where he was

7    seen entering the home and where the defendant sold him

8    approximately 1 gram of heroin.

9            THE COURT:  Do you disagree with that?

10           THE DEFENDANT:  No.

11           THE COURT:  Do you plead guilty to Count 6 that on

12   or about February 4, 2002, in Lawrence, you did distribute

13   heroin?

14           THE DEFENDANT:  Yes.

15           MR. LEVITT:  With respect to Count 7, the

16   government would show that on or about February 7, 2002, the

17   defendant and the cooperating witness had a telephone

18   conversation recorded.  They subsequently agreed to meet at

19   158 Butler Street.  At that time the defendant sold the

20   cooperating witness approximately 1 gram of heroin.

21           THE COURT:  Do you disagree with any of it?

22           THE DEFENDANT:  No.

23           THE COURT:  So do you plead guilty to Count 7 that

24   you distributed heroin on February 7?

25           THE DEFENDANT:  Yes.

1          MR. LEVITT:  Count 8, were this case to go to

2     trial, the government would show that on or about

3     February 13, 2002, the cooperating witness made a

4     consensually recorded phone call to the defendant and asked

5     to buy approximately 1 gram of heroin.  The defendant and the

6     cooperating witness agreed to meet later that day.  The

7     defendant sold the cooperating witness approximately 1 gram

8     of heroin.

9          THE COURT:  Do you plead guilty to Count 8 that you

10    distributed heroin on February 13?

11         THE DEFENDANT:  Yes.

12         MR. LEVITT:  With respect to Count 9, were this

13    case to go to trial, the government would show that on or

14    about February 19, 2002, a cooperating witness called the

15    defendant during the evening and had a consensually recorded

16    call and asked to purchase 10 bundles of heroin.  The

17    defendant said he was going to send Jason to get the heroin.

18    The cooperating witness was provided with $900 by agents and

19    sent to meet the defendant at 158 Butler Street in Lawrence.

20    Prior to the cooperating witness arriving at 158 Butler

21    Street, surveillance agents saw an individual identified as

22    Jason Brillon pull up to the house, go into the house briefly

23    and come out.  During the call setting up the transaction,

24    the defendant had said, again, that Mr. Brillon would bring

25    the heroin.  When the cooperating witness arrived at the

1    house, the defendant told him that he didn't have the full

2    10 bundles; he only had 9 bundles.  He sold the cooperating

3    witness the 9 bundles for $900, and it's certified as

4    (Inaudible) grams of heroin.

5          THE COURT:  Do you plead guilty to Count 9 that on

6    February 19, 2002, you distributed the heroin?

7          THE DEFENDANT:  Yes.

8          MR. LEVITT:  With respect to Count 10, the

9    government would show that on or about February 21, 2002, a

10   cooperating witness made a consensually recorded call to

11   Mr. Mercado.  They agreed that the defendant would sell the

12   cooperating witness approximately 1.4 grams of heroin.  The

13   cooperating witness went to the defendant's house, where in

14   fact the defendant sold the cooperating witness 1.4 grams of

15   heroin.

16         THE COURT:  What's the aiding and abetting?

17         MR. LEVITT:  During some of the transactions, other

18   individuals were involved.  Occasionally an individual named

19   Jason Brillon was involved.

20         THE COURT:  In this one, you just have him selling

21   directly, correct?

22         MR. LEVITT:  This one was direct.

23         THE COURT:  Do you plead guilty to distributing

24   heroin on February 21, 2002?

25         THE DEFENDANT:  Yes.

1          MR. LEVITT:  Count 11 is one of the counts to be

2     dismissed.

3          With respect to Count 12, on or about February 26,

4     2002, a cooperating witness made a consensually recorded call

5     to the defendant, and they agreed that the defendant would

6     sell the cooperating witness approximately 1.1 grams of

7     heroin.  The cooperating witness went to the home of the

8     defendant, where in fact the defendant sold him 1.1 grams of

9     heroin.

10          THE COURT:  Do you plead guilty to Count 12?

11          THE DEFENDANT:  Yes.

12          THE COURT:  We'll reserve on the forfeiture

13     allegation to see if there's a specific piece of property or

14     substitute property that you seek to forfeit.  So do you

15     understand that's not being dismissed?  I'll have to address

16     at sentencing what we want to do with that.

17          THE DEFENDANT:  Yes.

18          THE COURT:  Or before then.  If you find something

19     before then, it falls back in.

20          Now, on the conspiracy, I haven't taken a plea to

21     that yet.  What's the evidence that he conspired with

22     Brillon?  Is it just that one count?

23          MR. LEVITT:  No.  There are other counts where

24     there are conversations between the cooperating witness and

25     the defendant where the defendant talks about Brillon being

1　involved.　In addition, with respect to Count 5, Brillon was

2　present during the transaction that took place at 158 Butler

3　Street.　He's not charged substantively with it, but he was

4　there during that transaction.　There's another transaction

5　where, similar to Count 9, there's discussions between the

6　cooperating witness and the defendant in which the defendant

7　talks about sending Jason to get the drugs.　That's the basis

8　for the conspiracy count.

9　　　　　THE COURT:　And I imagine that's going to be the

10　heart of what we talk about in the -- is it the drugs

11　attributed to Jason that you're seeking to attribute to him

12　beyond to get him over the 100?

13　　　　　MR. LEVITT:　No, your Honor.　It's -- really, that

14　would be more of an issue for Brillon.　The information the

15　government would submit at sentencing would have to do with

16　historical information from confidential sources about the

17　historical drug trafficking of the defendant.

18　　　　　THE COURT:　All right, so it's not -- many of these

19　things arise because the conspirator sells the stuff.　That's

20　not really what you're talking about?

21　　　　　MR. LEVITT:　No.

22　　　　　THE COURT:　Do you plead guilty in Count 1 to

23　conspiracy to distribute heroin; that is, from a time unknown

24　to the grand jury but at least by in or about June, 2001, and

25　continuing thereafter, that in Lawrence, Haverhill, and

1    elsewhere in the District of Massachusetts, that you and

2    Jason Brillon did knowingly and intelligently conspire and

3    agree together, and with persons known and unknown to the

4    grand jury, to possess with intent to distribute and to

5    distribute quantities of heroin in violation of federal law?

6    Do you plead guilty to that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Now, the grand jury further alleges

9    that the conspiracy involved at least 100 grams of a mixture

10   or substance containing a detectable amount of heroin.  Do

11   you plead guilty to that?

12             THE DEFENDANT:  No.

13             THE COURT:  And that is the issue upon which you

14   are waiving the Apprendi issue, Apprendi claim; is that

15   right?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And you understand that I will hold a

18   hearing on that point?  Do you understand?

19             THE DEFENDANT:  Yes.

20             THE COURT:  All right, so I think I've taken all

21   the pleas.  I find that there's a substantial basis in fact

22   concerning each of these.  This is about your last chance

23   because I'm about to accept this plea.  Do you have any other

24   questions for your attorney or me?

25             THE DEFENDANT:  No.

1    THE COURT:  No?

2    THE DEFENDANT:  (The defendant nodded negatively.)

3    THE COURT:  You've got to say something.

4    THE DEFENDANT:  No.

5    THE COURT:  Fine, all right.  Just the Court

6  Reporter has to get it down.  You can't shake your head.  Do

7  you plead guilty knowingly, freely, and voluntarily to each

8  of these counts?

9    THE DEFENDANT:  Yes, I do.

10    THE COURT:  I find the plea is knowing and

11  voluntary.  It's supported by an independent basis in fact

12  concerning each of the essential elements on all of the

13  counts, with the exception of one we have not addressed, the

14  criminal forfeiture count, and, two, we have not addressed

15  drug amount yet.  So otherwise I take the plea.

16    Now, this sounds like a serious evidentiary

17  hearing.  What are you thinking about in terms of time?

18    MR. LEVITT:  I actually don't think it will be a

19  significant evidentiary hearing.  I mean, I think --

20    MR. RAPPAPORT:  In terms of time?

21    MR. LEVITT:  In terms of time.

22    THE COURT:  Why?  Who do you plan --

23    MR. LEVITT:  I think what we would do is -- and

24  some of the information will be -- the information will be

25  provided to Probation.

1          THE COURT:  But I don't take their word for it.

2          MR. LEVITT:  I understand, okay, so that will be

3     laid out.  And I think we're talking about one or two --

4     well, two or three witnesses on the government's part, but I

5     don't anticipate it being a long amount of time.

6          THE COURT:  So like an afternoon?

7          MR. LEVITT:  I think an afternoon.

8          THE COURT:  Like an hour?  What are we talking

9     about?

10          MR. LEVITT:  I think an hour, depending on

11     cross-examination, maybe two.

12          MR. RAPPAPORT:  I think we should maybe give it an

13     afternoon.  Just using the probable cause hearing as a gauge,

14     I think. . .

15          THE COURT:  So who are these people?  Is this the

16     agent himself?  Is there an undercover agent?  Or are these

17     cooperating individuals?

18          MR. LEVITT:  These will be cooperating witnesses

19     and witnesses who are aware of the defendant's drug

20     trafficking, either because they bought drugs from him or

21     witnessed it in other ways.

22          THE COURT:  So you'll -- have you turned over all

23     the Brady and Giglio stuff to him in terms of --

24          MR. LEVITT:  We have.  We'll go through it again to

25     make sure that we have everything.

1           THE COURT:  Just make sure because my biggest

2    issues, or at least the ones I hear about in these historical

3    cases, is that it's not necessarily under the control of the

4    U.S. Attorney's Office, but a lot of this information is

5    under the control of the local and state law enforcement.

6    And so then I get to the hearing, and something pops up that

7    he hasn't heard about.  And I'm not blaming you, but, on the

8    other hand, he has a right to have it.  I mean, we've all

9    been there and done that, so --

10           MR. LEVITT:  We will go through that.

11           THE COURT:  Who is it?  Whose investigation is it?

12           MR. LEVITT:  It's FBI.

13           THE COURT:  From the get-go?  It wasn't Essex

14    County?

15           MR. RAPPAPORT:  It involves the Essex County Drug

16    Task Force as well, your Honor.

17           MR. LEVITT:  Well, it's an FBI Gang Task Force that

18    utilizes a lot of local law enforcement in Essex County.

19           THE COURT:  My only point is, to the extent that

20    you've got three people who are cooperators rather than

21    undercover agents, who might have criminal records and deals

22    with local and State Police, I would go back and make sure

23    you get it.  It's the biggest area of controversy because

24    you'll say, "I didn't know," and he'll say, "But it's still

25    the government," and so -- right?

1          MR. RAPPAPORT:  Absolutely.

2          THE COURT:  That's a repartee.  So just make sure

3    you double-check that.  Other than that, I'll assume that we

4    can hold a two- or three-hour evidentiary hearing to satisfy,

5    unless you think there's going to be more to it.  Do you have

6    witnesses?

7          MR. RAPPAPORT:  I'm not going to have any

8    witnesses, your Honor, or should I say Mr. Mercado is not

9    going to have any witnesses.

10          THE COURT:  So when do you want to do this?

11          THE CLERK:  July 14 at 2:00 p.m., the whole

12    afternoon.

13          MR. RAPPAPORT:  I've got to check with the boss,

14    but --

15          THE COURT:  That's why I ask because the first two

16    weeks of July are tough weeks.  Some people go away.

17          MR. RAPPAPORT:  Well, I should have it in my book,

18    like, when my wife has scheduled us, but I think I'm okay.  I

19    think I'm okay that week.

20          THE COURT:  The one thing that drives me nuts is

21    when people let me know two days before if I've blocked off

22    an afternoon.

23          MR. LEVITT:  Your Honor, I actually have a trial

24    starting that day.  I would be available in the afternoon.

25          THE COURT:  Is it a real trial?

```
1              MR. LEVITT:  It's a real trial.

2              THE COURT:  You're sure?

3              MR. LEVITT:  Well, I really think so.

4              THE COURT:  All right, do you want to do it the

5     following week?

6              MR. RAPPAPORT:  I'm available on the 21st.

7              THE COURT:  Is that doable for us?

8              THE CLERK:  Yes, yes.  Yes, it is, as far as I

9     know.

10             THE COURT:  Okay.

11             MR. LEVITT:  Thank you, your Honor.

12             MR. RAPPAPORT:  Thank you, your Honor.

13             THE CLERK:  Court is in recess.

14             (Adjourned, 4:40 p.m.)

15

16

17

18

19

20

21

22

23

24

25
```

1                     C E R T I F I C A T E

2

3

UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS      ) ss.
CITY OF BOSTON                )

5

6

7

8            I, Lee A. Marzilli, Official Federal Court

9   Reporter, do hereby certify that the foregoing transcript,

10   Pages 1 through 31 inclusive, was recorded by me

11   stenographically at the time and place aforesaid in

12   Criminal No. 02-10257-PBS, United States of America Vs. Elvin

13   Mercado, and thereafter by me reduced to typewriting and is a

14   true and accurate record of the proceedings.

15            In witness whereof I have hereunto set my hand this

16   31st day of October, 2004.

17

18

19

20

21

22            _____
LEE A. MARZILLI, CRR
23            OFFICIAL FEDERAL COURT REPORTER

24

25

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELVIN MERCADO, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) Civil No. 04-11653-PBS ) |
| Respondent. | ) ) ) ) ) ) |

**AFFIDAVIT OF LUIS COTTO IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

I, Luis Cotto, hereby depose and state as follows:

1.      Elving Mercado is my stepson.

2.      I attended Elving's sentencing hearing in 02-CR-10259-PBS at the John Joseph Moakley U.S. Courthouse in Boston, Massachusetts, on July 21 and 22, 2003.

3.      Steven Rappaport represented Elving as counsel in 02-CR-10259-PBS.

4.      On July 21, 2003, immediately after the first day of the sentencing hearing had concluded, counsel discussed the case with me, Elving's mother (Lourdes Schmidt), Elving's girlfriend (Melissa Cotto), and Elving's sister (Lourdes Jeanette Meran) in the hallway of the courthouse.  Counsel told us during this discussion that he was sure that the Court would give Elving a maximum sentence of five years.  He also told us not to worry because "Elving will be

with his family soon." At the end of the discussion, counsel asked that I bring money to pay Elving's attorney fees the next day.

5.      On July 22, 2003, after the second and final day of Elving's sentencing hearing, counsel told me that the Court had sentenced Elving to 188 months and that Elving had one year in which to appeal this sentence.

6.      Counsel never explained to me why the Court sentenced Elving to 188 months instead of the five-year maximum sentence that he had assured us the Court would impose.

7.      Following the sentencing hearing, I spoke with Elving on the phone about his sentence.  He told me that counsel had always assured him that he would receive a maximum sentence of only five years, and that he was therefore shocked when the Court imposed a sentence of 188 months.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 2, 2005.

Louis Cotto

LIBA/1653099.1

# EXHIBIT F

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ELVIN MERCADO            )
                        )
VS.                     )          CIVIL NO#04-11653-PBS
                        )
UNITED STATES OF AMERICA )

## BRIEF IN SUPPORT OF  PLAINTIFF'S MOTION  FOR TEMPORARY RESTRAINING ORDER AND/OR PREUMINARY INJUNCTION

The Petitioner, ELVIN MERCADO,#24448-038 submitted this pro se
motion with cognitive  respect to the courts encompassing etiquette
and procedure, seeking a tempoary restraining order and/or preliminary
injunction against DAVID L. WINN, WARDEN of F.M.C DEVENS,MASS to cease
and desist any and all action and/or procedures that would yield the
destruction, the removal from fmc, Devens premises, the adulteration
and/or the purging of fmc, Devens inmate telephone records, telephone
recordings,and telephone recording transcripts between ELVIN MERCADO
and STEVEN J. RAPPAPORT, until satisfying the preexisting court
granted motion, to review, transcribe and deliva true copies of the
above mentioned transcripts to the plaintiff to be used as evidence
in plaintiff's pending 2255 action. Plaintiff welcomes any and all
action deemed necessary and granted by the court to protect the
integrity of the recored conversation's between ELVIN MERCADO and
STEVEN J. RAPPAPORT. Let it further be known to the court that the
sole reason for this motion is to protect these important records.
The Plaintiff acknowledges that he has been treated fairly without
opposition by staff at F.M.C DEVENS, and harbors no acrimony toward
Warden,WINN or his sobordinates. Plaintiff feels the  risk of losing
valuable evidence increases with each passing day.

Respectfully Submitted,

ELVIN MERCADO#24448-038

*Elvin Mercado*

Petitioner

JUNE 22, 2005

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERK/ USDC MASSAChusetts

one Courthouse Way
Boston, Mass 02210

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7004 2510 0004 2117 4800

PS Form 3811, February 2004    Domestic Return Receipt



**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ .37 |
| Certified Fee | 2.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.42 |

Sent To
The Cleak/ USDC MASSAchusetts
Street, Apt. No.; or PO Box No.   one Courthouse way.
City, State, ZIP+4   Boston MASS 02210

PS Form 3800, June 2002    See Reverse for Instructions

7004 2510 0004 2117 4800



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Elvin Mercado Reg# 24448-038 Unit-H-B
F.M.C Devens
P. O. Box 879
Ayer. Mass 01432

H4

4324-0879

### Certified Mail Provides:

PS Form 3800, June 2002 (Reverse)

- A mailing receipt
- A unique identifier for your mailpiece
- A record of delivery kept by the Postal Service for two years

### Important Reminders:

- Certified Mail may ONLY be combined with First-Class Mail® or Priority Mail®.
- Certified Mail is *not* available for any class of international mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a *Return Receipt* may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS® postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement *"Restricted Delivery"*.
- If a postmark on the Certified Mail receipt is desired, please present the arti-cle at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry. Internet access to delivery information is not available on mail addressed to APOs and FPOs.**

# EXHIBIT G

Department of Justice
United States Attorney's Office
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

Main Reception: (617) 748-3100

Michael J. Sullivan
United States Attorney
District of Massachusetts



## Facsimile Transmission Cover Page

**TO:**       Roberto M. Braceras, Esq.
              Robert J. Durbin, Esq.

              Goodwin Procter LLP

---

### SENSITIVE U.S. ATTORNEY FACSIMILE COMMUNICATION

The information contained in this facsimile message, and any and all accompanying documents constitutes
sensitive information. This information is the property of the U.S. Attorney's Office. If you are not the intended
recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this
information is strictly prohibited. If you received this message in error, please notify us immediately at the above
number to make arrangements for its return to us.

**FROM:**    AUSA Peter K. Levitt

              <u>Sender's Phone No.</u>: (617) 748-3355

              <u>*Sender's Receiving Fax No.*</u>: (617) 748-3965

              <u>Recipient's Fax No.</u>: (617) 523-1231

              <u>Date</u>: 10/21/05          <u>Pages</u>: 4 (including cover)

              Re:    <u>Elvin Mercado</u>

---

# INSTRUCTIONS

IMMEDIATELY NOTIFY SENDER OF ANY DIFFICULTIES IN TRANSMISSION.

      [*"X" for a receipt notification*]     PLEASE NOTIFY SENDER OF RECEIPT BY TELEPHONE.



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*    *John Joseph Moakley United States Courthouse*
                                    *1 Courthouse Way*
                                    *Suite 9200*
                                    *Boston, Massachusetts 02210*

October 21, 2005

BY FACSMILE

Roberto M. Braceras, Esq.
Robert J. Durbin, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

        Re:  <u>Elvin Mercado</u>

Dear Rob:

        In follow up to my e-mail, I enclose two letters that I
received from FMC Devens concerning your request for the
taperecorded conversations involving Elvin Mercado.  Please do
not hesitate to call me if you have any questions about this.

                        Very truly yours,

                        MICHAEL J. SULLIVAN
                        United States Attorney

        By:

                        PETER K. LEVITT
                        Assistant U.S. Attorney
                        (617) 748-3355

Enclosures



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Medical Center, Devens*
Special Investigative Section

P.O. Box 880
Ayer, MA 01432

October 19, 2005

Mr. Peter Levitt
Assistant United States Attorney
District of Massachusetts
John Moakley Courthouse
1 Courthouse Way
Boston, MA 02210

Re:    Mercado, Elvin
       Reg. No. 24448-038

Dear Mr. Levitt:

Per our recent conversation, you verbally requested telephone recordings between FMC Devens inmate Elvin Mercado, Reg. No. 24448-038 and his Attorney for the dates of July, 2003 through November, 2003. A search for these requested telephone conversations was conducted and revealed these recording no longer exist.  Records are only obtained according to policy for six months, unless they are subpoenaed before they are erased from the system.  Therefore, inmate Mercado's conversations with his Attorney for dates of July, 2003 to November, 2003 haven been deleted and cannot be recovered.

If you have any questions, please feel free to contact me at (978) 796-1177.

Sincerely,

Albert Colon
Lieutenant



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Medical Center, Devens*
Special Investigative Section

*P.O. Box 880*
*Ayer, MA 01432*

October 19, 2005

Mr. Peter Levitt
Assistant United States Attorney
District of Massachusetts
John Moakley Courthouse
1 Courthouse Way
Boston, MA 02210

Re:    Mercado, Elvin
        Reg. No. 24448-038

Dear Mr. Levitt:

In your request regarding inmate Elvin Mercado, Reg. No. 24448-038, recorded telephone calls to his attorney from July 2003 to November 2003 revealed that it no longer exist in our Inmate Telephone System. Our policy dictates inmate telephone calls are saved for a (6) month period, unless they are subpoenaed. If any inmate telephone calls are subpoenaed, they are kept until the requesting agency releases them. Inmate Mercado telephone calls to his attorney or another person for that time period has been deleted.

If you have any questions, please feel free to contact me at (978) 796-1177.

Sincerely,

Albert Colon
Lieutenant

# EXHIBIT H



**U.S. Department of Justice**

*United States Attorney*

*District of Massachusetts*

*1 Courthouse Way, Suite 9200*
*Boston, Massachusetts 02210*

April 7, 2003

<u>BY FACSIMILE AND MAIL</u>

Steven J. Rappaport, Esquire
Rappaport, Freeman & Pinta
171 Milk Street, Suite 400
Boston, MA 02109

**FILED**
In Open Court
USDC, Mass.
Date 4-14-03
By ___
Deputy Clerk

Re:  <u>United States v. Elvin Mercado</u>
     Criminal No. 02-CR-10259 PBS

Dear Mr. Rappaport:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Elvin Mercado ("Defendant"), in the above-captioned case.  The Agreement is as follows:

1.   <u>Change of Plea</u>

At the earliest practicable date but in no event later than April 18, 2003, Defendant shall plead guilty to the following counts of the above-captioned Indictment:  Count 1 (insofar as it alleges that Defendant conspired with others to distribute heroin), and will admit that the overall conspiracy involved at least 100 grams of heroin; and Counts 2-3, 5-10, and 12 (distribution of heroin).  Defendant expressly and unequivocally admits that he in fact knowingly, intentionally, and willfully committed the crimes charged in Counts 1-3, 5-10, and 12 of the Indictment, and is in fact guilty of those offenses, but maintains that less than 100 grams of heroin are attributable to him for purposes of calculating his sentencing guidelines range. The government agrees to dismiss Counts 4 and 11 at the time of sentencing.

DOCUMENT
42

2.   Penalties

Defendant faces the following minimum mandatory and maximum penalties on Count One of the Indictment (if the Court finds that at least 100 grams of heroin are attributable to Defendant under the sentencing guidelines):  a maximum term of imprisonment of life with a 10-year mandatory minimum sentence, a fine of up to $4,000,000, at least an 8-year term of supervised release and a maximum of life, and a $100 Special Assessment.  Defendant faces the following potential maximum penalties on Count One of the Indictment (if the Court finds that less than 100 grams of heroin are attributable to Defendant under the sentencing guidelines): a maximum term of imprisonment of 30 years, a fine of up to $2,000,000, at least a 6-year term of supervised release and a maximum of life, and a $100 Special Assessment.

Defendant faces the following maximum penalties on each of Counts Two, Three, Five, Six, Seven, Eight, Nine, Ten, and Twelve of the Indictment:  a maximum term of imprisonment of 30 years, a fine of up to $2,000,000, at least a 6-year term of supervised release and a maximum of life, and a $100 Special Assessment.

Defendant also faces forfeiture to the extent charged in the Indictment.

3.   Sentencing Guidelines

The parties will take the following positions at sentencing under the United States Sentencing Guidelines ("U.S.S.G."):

(A)  Base Offense Level

The parties agree to take the position that Defendant has two prior felony convictions of either a crime of violence or a controlled substance offense and therefore qualifies as a career offender.  Based on information currently known to the U.S. Attorney, the U.S. Attorney will take the position that Defendant is responsible for at least 100 grams of heroin.  The defendant will take the position that less than 100 grams of heroin are attributable to him.  If the Court finds that at least 100 grams of heroin are attributable to Defendant, the parties agree to take the position that Defendant's Base Offense Level is 34, pursuant to U.S.S.G. § 4B1.1, and that Defendant's criminal history category is therefore Category VI.  If the Court finds that less than 100 grams of heroin are attributable to Defendant, the parties agree to take the position that Defendant's Base

Offense Level is 32, pursuant to U.S.S.G. § 4B1.1, and that
Defendant's criminal history category is therefore Category VI.
The defendant waives any claim he has under <u>Apprendi v. New
Jersey</u> and U.S.S.G. § 2D1.1 to have that determination made by
the jury at trial pursuant to a superseding indictment.

   In consideration of the concessions made by the U.S.
Attorney in this Agreement, Defendant agrees not to seek to be
sentenced or resentenced with the benefit of any successful
collateral challenge of any counseled criminal conviction that
existed as of February 17, 2003.  Defendant acknowledges and
agrees that this subparagraph is a material provision of this
agreement and that any breach of it will entitle the U.S.
Attorney  to exercise any and all remedies available to him
including the remedies set forth in paragraph 15, below.

   (B) <u>Acceptance of Responsibility</u>

   Based on Defendant's acceptance of personal responsibility
for the offenses of conviction in this case and willingness to
provide complete information regarding his own involvement in the
offenses, and information known to the U.S. Attorney at this
time, the U.S. Attorney agrees that Defendant's Adjusted Offense
Level should be reduced by three levels under U.S.S.G. § 3E1.1.

   The U.S. Attorney specifically reserves the right not to
recommend a reduction under U.S.S.G. § 3E1.1 if, at any time
between his execution of this Agreement and sentencing Defendant:

          (a)  Fails to admit a complete factual basis for
               the plea;

          (b)  Fails to truthfully admit his conduct in the
               offenses of conviction;

          (c)  Falsely denies, or frivolously contests,
               relevant conduct for which Defendant is
               accountable under U.S.S.G. § 1B1.3;

          (d)  Fails to provide truthful information about
               his financial status;

          (e)  Gives false or misleading testimony in any
               proceeding relating to the criminal conduct
               charged in this case and any relevant conduct
               for which Defendant is accountable under

                              3

U.S.S.G. § 1B1.3;

 (f) Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

 (g) Commits a crime; and/or,

 (h) Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the Government may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if Defendant obstructs justice after date of this Agreement.

4. Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence before the District Court:

Absent the filing of a motion pursuant to U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e), the U.S. Attorney agrees to recommend the following sentence before the District Court:

 (a) Subject to any applicable mandatory minimum sentence, incarceration within the applicable guideline range;

 (b) A fine within the statutory range unless the Court finds pursuant to U.S.S.G. § 5E1.2(e) that Defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine;

 (c) A mandatory special assessment of $1,000; and

 (d) A period of supervised release of at least 6 years.

4

The U.S. Attorney and Defendant agree that, absent the filing of a motion pursuant to U.S.S.G. § 5K1.1, there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines. Accordingly, neither the U.S. Attorney nor Defendant will seek a departure from the Sentencing Guidelines on any ground. The U.S. Attorney expressly reserves the right to seek an upward departure pursuant to U.S.S.G. § 4A1.3 should any of Defendant's prior state convictions be vacated subsequent to the execution of this Agreement.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5. <u>Payment of Mandatory Special Assessment</u>

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6. <u>Waiver of Rights to Appeal and to Bring Collateral Challenge</u>

Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal. Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:

     (1) Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and,

     (2) The adoption by the District Court at sentencing of any of the positions found in paragraph 3 which will be advocated by the U.S. Attorney with regard

5

to offense conduct, adjustments and/or criminal
history under the U.S. Sentencing Guidelines or
application of minimum mandatory sentences.

Defendant's waiver of rights to appeal and to bring
collateral challenges shall not apply to appeals or challenges
based on new legal principles in First Circuit or Supreme Court
cases decided after the date of this Agreement which are held by
the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of
the United States as set forth in 18 U.S.C. § 3742(b), and the
U.S. Attorney therefore retains his appeal rights.

7.    Cooperation

    a.    Terms of Cooperation

Defendant agrees to cooperate fully with law enforcement
agents and government attorneys.  He must provide complete and
truthful information to all law enforcement personnel.  If his
testimony is requested, he must testify truthfully and completely
before any grand jury, and at any hearing and trial.  Defendant
must answer all questions put to him by any law enforcement
agents or government attorneys and must not withhold any
information. He must not attempt to protect any person or entity
through false information or omission, or to implicate falsely
any person or entity.  Upon request, he must furnish all
documents, objects and other evidence in his possession, custody
or control that are relevant to the government's inquiries.

Defendant understands that he has a right to have counsel
present when communicating with representatives of the government
concerning the criminal conduct with which he has been charged.
To facilitate his cooperation, Defendant hereby knowingly and
voluntarily waives this right with respect to all debriefings by
law enforcement agents and government attorneys and all
appearances to testify.  This waiver may be revoked at any time
by a specific request by Defendant or his counsel without
otherwise affecting the terms or enforceability of this
Agreement.

To enable the Court to have the benefit of all relevant
sentencing information, Defendant waives any rights he may have
to prompt sentencing and will join in any requests by the U.S.
Attorney that sentencing be postponed until Defendant's

cooperation is complete. Defendant understands that the date of Defendant's sentencing is within the sole discretion of the Court and that this Agreement may require Defendant's cooperation to continue even after Defendant has been sentenced. Defendant's failure to continue to cooperate pursuant to the terms of this Agreement after sentence is imposed shall constitute a breach of this Agreement by Defendant.

      b.   <u>Substantial Assistance Motion</u>

In the event that Defendant provides substantial assistance in the investigation or prosecution of another person who has committed a criminal offense, the U.S. Attorney agrees that, at or before the time of sentencing, the U.S. Attorney will make a motion under U.S.S.G. § 5K1.1, and if the U.S. Attorney determines it to be appropriate, 18 U.S.C. § 3553(e) so that the sentencing court may impose a sentence below that which otherwise would be required under the Sentencing Guidelines and the relevant statutes. The determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review. The U.S. Attorney expressly reserves the right to decline to file a motion pursuant to U.S.S.G. § 5K1.1 if Defendant violates any condition of his pretrial release, violates any of the requirements of honesty and candor detailed in paragraph 7(a) above, or engages in any criminal conduct after the date he signs this Agreement. The U.S. Attorney reserves the right, in his sole discretion, to file a motion under U.S.S.G. § 5K1.1 but not under 18 U.S.C. § 3553(e). Defendant may not withdraw his plea if the U.S. Attorney determines that Defendant has not rendered substantial assistance, if the U.S. Attorney determines to file a motion under U.S.S.G. § 5K1.1 but not under 18 U.S.S.G. § 3553(e), or if the Court refuses to grant the U.S. Attorney's motion for a downward departure.

      c.   <u>Sentence Recommendation with Substantial Assistance</u>

If Defendant provides substantial assistance, subject to all the provisions of paragraphs 7(a) and (b) above, the U.S. Attorney will advise the sentencing judge of the full nature, extent and value of the assistance provided by Defendant. The U.S. Attorney reserves the right to recommend a particular sentence or sentencing range, reserves the right to file a motion under U.S.S.G. § 5K1.1 but not under 18 U.S.C. § 3553(e) or to make no recommendation at Defendant's sentencing.

7

d.    Letter Immunity

In return for Defendant's full and truthful cooperation, the U.S. Attorney agrees not to use any information provided by Defendant pursuant to this Agreement or pursuant to the proffer letter dated January 23, 2003 (or any information directly or indirectly derived therefrom) against Defendant in any criminal case except in a prosecution (1) for perjury or obstruction of justice, or for making a false statement after the date of this Agreement; or (2) for an act of physical violence against the person of another, or conspiracy to commit any such act of violence. The U.S. Attorney reserves the right to respond fully and completely to all requests for information by the District Court and U.S. Probation Office in this case. All such disclosures, however, shall be made subject to the provisions constraining the use of this information by the District Court and U.S. Probation Office contained in U.S.S.G. § 1B1.8(a) and the commentary thereto. Notwithstanding the provisions of U.S.S.G. § 1B1.8(b)(5) and the commentary thereto, the U.S. Attorney agrees to take the position that at the time of sentencing information provided by Defendant pursuant to this Agreement should not be used either in determining where within the applicable guideline range to sentence Defendant or in determining whether, or to what extent, a departure from the Sentencing Guidelines is warranted.

If the U.S. Attorney determines that Defendant has breached this Agreement by making any false, incomplete or misleading statement, or by providing any false, incomplete or misleading information to any law enforcement personnel, grand jury or court, the U.S. Attorney may terminate this Agreement as set forth below, and may also prosecute Defendant for any and all offenses that could be charged against him in the District of Massachusetts, including, but not limited to, false statements and perjury.

8.    Court Not Bound By Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Defendant may not withdraw his plea of guilty regardless of what sentence is

8

imposed. Nor may Defendant withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

### 9. Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning his assets.

### 10. Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph one of this Agreement.

### 11. Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

### 12. Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Defendant understands that, should he breach any provision of this agreement, the U.S.

9

Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, or pursuant to the proffer agreement dated January 23, 2003, without any limitation. In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

### 13. Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

### 14. Complete Agreement

This letter contains the complete and only agreement between the parties.  No promises, representations or agreements have been made other than those set forth in this letter and in the proffer letter dated January 23, 2003.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral with the sole exception of those contained in the proffer letter dated January 23, 2003.  This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Peter Levitt.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _James B. Farmer_

JAMES B. FARMER
Assistant U.S. Attorney
Chief,
Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

JOHN A. WORTMANN, JR.
PETER K. LEVITT
Assistant U.S. Attorneys

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it
with my attorney.  I hereby acknowledge that it fully sets forth
my agreement with the United States Attorney's Office for the
District of Massachusetts.  I further state that no additional
promises or representations have been made to me by any official
of the United States in connection with this matter. I understand
the crimes to which I have agreed to plead guilty, the maximum
penalties for those offenses and Sentencing Guideline penalties
potentially applicable to them.  I am satisfied with the legal
representation provided to me by my attorney.  We have had
sufficient time to meet and discuss my case.  We have discussed
the charges against me, possible defenses I might have, the terms
of this Plea Agreement and whether I should go to trial.  I am
entering into this Agreement freely, voluntarily, and knowingly
because I am guilty of the offenses to which I am pleading guilty
and I believe this Agreement is in my best interest.

_Elvin Mercado_

ELVIN MERCADO
Defendant

Date: __4/14/03__


     I certify that ELVIN MERCADO has read this Agreement and
that we have discussed its meaning.  I believe he understands the
Agreement and is entering into the Agreement freely, voluntarily
and knowingly.

STEVEN RAPPAPORT, Esquire
Attorney for Defendant

Date: __4/14/03__

12

# EXHIBIT I

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---------------------------------
UNITED STATES OF AMERICA      :      Cr. No. 02-10259-PBS
                              :
                              :
            v.                :      Courtroom No. 13
                              :      1 Courthouse Way
                              :      Boston, MA 02210-3002
ELVIN MERCADO                 :      9:00 a.m., Thursday
---------------------------------   July 22, 2003


Evidentiary Sentencing
Day Two



Before:         THE HONORABLE PATTI B. SARIS,
                UNITED STATES DISTRICT JUDGE




APPEARANCES:

Peter Levett, Assistant United States Attorney,
   1 Courthouse Way, Suite 9200, Boston, MA 02210-3002,
   on behalf of the Government.

Rappaport & Delaney (by Steven J. Rappaport, Esquire),
   228 Central Street, Lowell, MA 01852,
   on behalf of the Defendant.



Marie L. Cloonan
Federal Court Reporter
1 Courthouse Way - Room 7200
Boston, MA 02210 - 617-439-7086
Mechanical Steno - Transcript by Computer

2-2

1                              * * *

2            THE CLERK:  The case of the United States v. Elvin

3      Mercado, Criminal Action No. 02-10259, will now be heard

4      before this Court.

5            Will counsel and Probation please identify

6      themselves for the record.

7            MR. LEVITT:  Peter Levitt on behalf of the United

8      States.

9            MR. RAPPAPORT:  Steven Rappaport on behalf of Elvin

10     Mercado.

11           MS. FOSTER:  Kelly Foster for Probation.

12           MR. LEVITT:  Your Honor, we're ready to proceed.

13     But, the government has taken into consideration what the

14     Court said at the end of the hearing yesterday and is not

15     pursuing its dispute over the weight.

16           THE COURT:  All right.

17           So, it's under a hundred.  That's the key

18     demarcation everybody talked about in the plea.  So, let me

19     go on one more step.

20           I know that there are other issues, particularly

21     whether or not there's a downward departure and whether or

22     not he played a leadership role either in the drug piece of

23     it or the gang piece of it.

24           So, do you want to continue cross-examining the

25     agent?

2-121

1    and testing and mental health counseling.

2         I think that this is very sad.  From what I gather

3    from the pre-sentence report, at some point, you actually

4    did withdraw and began to stop pumping -- is that the word

5    I've learned?

6         MR. RAPPAPORT:  Judge --

7         THE COURT:  He started a family business and you

8    have a beautiful little daughter who I've seen here and

9    obviously a wife who cares for you because I saw -- I've

10   been watching, although you couldn't, because I looked at

11   her -- the girlfriend -- meaningful other.  And, I think

12   it's a really sad scene.  Because, you had a lousy

13   upbringing and, in terms of mental health problems -- I

14   don't mean upbringing -- but troubles as a kid and you seem

15   deeply immersed with a bad group of people.

16        And, it looked as if things were turning around

17   when you got indicted, is what it looks like.  But, I'm

18   hoping that you'll be in the Boston area and I'm hoping that

19   you'll be able to see your daughter.  And, hopefully, when

20   you get out, you won't go back on the drugs, which I think

21   probably precipitated all of this.

22        MR. RAPPAPORT:  Judge, just a clarification.  You

23   have recommended the intensive drug program?  Did you say

24   that that's to be done in the Boston area?

25        THE COURT:  I'm hoping he can get into Devens.  I

2-122

1    don't know whether ...

2           With respect to the gang, as I say, I find he was a

3    member of the gang and a trusted member of the gang, perhaps

4    even in the inner circle of the gang.  But, the gang was not

5    directly related to the drug activity.  That was very

6    helpful testimony.  The drug activity was separate and apart

7    from it.

8           While I do find the involvement in the gang was

9    relevant to the decision not to downwardly depart, I am

10   specifically not making a finding that he was a leader.

11          So, that may come at a different day or different

12   time. It strikes me as a fairly complicated heirarchy.  And,

13   while he was clearly trusted and he may have had soldiers,

14   it's hard to figure out whether those soldiers were related

15   to the drugs or to the gang and I don't think I need to make

16   that decision.

17          So, Mr. Alba, to you want to read the rights.

18          THE CLERK:  Defendant please stand.

19          Mr. Elvin Mercado, the Court hereby notifies you of

20   your right to appeal the sentence.  If you cannot afford the

21   cost of an appeal, you may move to proceed informa pauperis.

22   If you cannot afford counsel for an appeal, one will be

23   appointed for you.  You are also notified that the Clerk of

24   Court will file an appeal on your behalf if requested by you

25   to do so.  Any appeal from the sentence must be filed within

2-123

1    ten days of entry of judgment on the docket.

2          Do you understand these rights?

3          THE DEFENDNAT:  Yes.

4          THE CLERK:  Thank you.

5          THE COURT:  We'll stand in recess.

6          THE CLERK:  The Court is in recess.

7          (Whereupon the hearing was concluded.)

8

9

### I N D E X

| Witness | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Mark Karangekis, Sworn | | | | |
| (by Mr. Rappaport) Cont'd. | 2-11 | | | 2-65 |
| (by Mr. Levitt) | | 2-44 | | |
| | | | | |
| Mark Karangekis, Resumed | | | | |
| (by Mr. Levitt)  Cont'd. | | 2-59 | | |
| | | | | |
| Brandon Greenwood, Sworn | | | | |
| (by Mr. Levitt) | 2-75 | | | |
| (by Mr. Rappaport) | | 2-89 | | |

### E X H I B I T S

| No. | Description | for Id. | in Evd. |
|---|---|---|---|
| Govt.  8 | Memo | | 2-50 |
| Govt.  9 | Memo | | 2-51 |
| Govt. 10 | Excerpt of Transcript | | 2-64 |
| Govt. 11 | Cassette Tape | | 2-64 |
| Deft.  A | Criminal Docket - Brandon Greenwood | | 2-112 |
| Deft.  B | Transcript of Detention Hearing | | 2-112 |

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

**CERTIFICATE**

I, Marie L. Cloonan, Official Reporter of the
United States District Court, do hereby certify that
the foregoing transcript, from Page 2-1 to Page 2-126,
constitutes to the best of my skill and ability a true
and accurate excerpt of transcription of my stenotype
notes taken in the matter of Criminal No. 02-10259,
United States of America vs. Elvin Mercado.

_Marie L. Cloonan_
-------------------------------------

FORM CSR · LASER   REPORTERS PAPER & MFG. CO.   800-626-6313