# Exhibit B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
-------------------------------------
UNITED STATES OF AMERICA        :        Cr. No. 02-10259-PBS
                                :
                                :
            v.                  :        Courtroom No. 13
                                :        1 Courthouse Way
                                :        Boston, MA 02210-3002
ELVIN MERCADO                   :        9:00 a.m., Thursday
-------------------------------------    July 22, 2003
```

Evidentiary Sentencing
Day Two


Before:         THE HONORABLE PATTI B. SARIS,
                UNITED STATES DISTRICT JUDGE




APPEARANCES:

Peter Levett, Assistant United States Attorney,
    1 Courthouse Way, Suite 9200, Boston, MA 02210-3002,
    on behalf of the Government.

Rappaport & Delaney (by Steven J. Rappaport, Esquire),
    228 Central Street, Lowell, MA 01852,
    on behalf of the Defendant.




Marie L. Cloonan
Federal Court Reporter
1 Courthouse Way - Room 7200
Boston, MA 02210 - 617-439-7086
Mechanical Steno - Transcript by Computer

FORM CSR-LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

2-112

1  (Defendant Exhibit A, Criminal Docket - Brandon Greenwood,

2  admitted into evidence.)

3  (Defendant Exhibit B, Transcript of Detention Hearing held

4  on 10-16-02, admitted into evidence.)

5          MR. RAPPAPORT:  Other than that, there is no case

6  in chief.

7          THE COURT:  Okay.  Now, here's the issue.

8          I have to leave here at five of one.  I had no idea

9  this hearing was going to go so long today.  So, we'll see

10  what we can do before then.  Otherwise, we'll just have to

11  finish it this afternoon.

12          So, your recommendation -- let me just first say

13  that I think the total offense level -- let me just say

14  this.  I find that the amount of the drugs is under a

15  hundred grams.  The government is not pressing that issue as

16  I understand it.  And, there is concern about the criminal

17  history category.  But, at least I think everyone agrees

18  that he is a career offender on the face of the record.  The

19  question is whether I depart, what we'll discuss in a

20  second.  But, the total offense level 31, the criminal

21  history category is 6, which means the range is 188 to 235

22  months imprisonment, 72 months of supervised release,

23  $15,000 to $20 million fine and a thousand dollar special

24  assessment.

25          Is that correct?

2-113

1            MS. FOSTER:  That's correct.

2            THE COURT:  All of that is correct.

3            All right.  So, we move on, now, essentially to the

4    government's recommendation and, then, I'll hear a motion

5    for downward departure.  And, then, we'll come back to you.

6            What's your recommendation?

7            MR. LEVITT:  Well, your Honor, the government

8    recommends that the defendant be sentenced within the

9    guideline range.  Primarily, the government would want to be

10   heard on the departure issue.

11           THE COURT:  You're wherever I want to be?

12           MR. LEVITT:  Yes, your Honor, within the guideline

13   range.  I mean, my view is that it should be in the middle

14   of the guideline range, rather than top or bottom.

15           THE COURT:  All right.  Thank you.

16           Mr. Rappaport, here's the issue at this point.  The

17   only issue is whether it's a 6 or a 5.

18           MR. RAPPAPORT:  I understand, your Honor.

19           THE COURT:  All right.

20           So, do you want to make your argument on that now

21   and --

22           MR. RAPPAPORT:  Yes.  Very briefly, Judge -- at

23   least as brief as I can be.

24           My actual concern when I took a look at this was I

25   had a 17-year-old kid who, back in 1994, three days apart,

2-114

1    had two street-level distribution cases or possession with

2    intent to distribute cases, which clearly were treated by

3    the Court as if they were one case back at that time.  It

4    seemed that this was outside the heartland of what we would

5    consider the ordinary career criminal.

6            He was, as I say, a young man.  He was a special

7    education student.  He didn't make it through high school.

8    He had a history of mental health problems.  He was a poly

9    substance abuser at that time himself.  And, it just seemed

10   to me that, bearing in mind that technically they put him

11   into that career offender category -- and, frankly, Judge,

12   when you look at the PSR, I mean, we're talking about an

13   incredible increase in his criminal -- his sentencing

14   exposure.  It just seemed that this was a case where the

15   Court should consider departing.

16           And, I want to say something else.  While I

17   recognize that there are ten criminal history points here, I

18   also want the Court to understand that only three of those

19   criminal history points -- one for the offense itself, and,

20   then, either two or three -- I think it's two for it having

21   occurred -- this offense having occurred, I believe, within

22   five years of it?  There was a possession of marihuana case

23   that Mr. Mercado, uncounseled, pled guilty to.  No question

24   that he pled guilty to it.  There was no time involved in

25   the case.

2-115

1    And, then, I guess it was within two years after

2    the period of probation that he was on that case, that he

3    was charged with this case.

4    So, he gets the one point for the possession of

5    marihuana, that uncounseled case.  And, then, he gets two

6    points for this case happening within a short time

7    thereafter.

8    Judge, I understand that Probation properly gave

9    him those career history points.  But, again, let's take a

10    look at the underlying case that he pled guilty to, a street

11    possession of marihuana.

12    I would submit that --

13    THE COURT:  Well, there were distribution counts --

14    MR. RAPPAPORT:  No, no, no.  I --

15    THE COURT:  -- to the two that created the career

16    offender points.

17    MR. RAPPAPORT:  Oh, yes.  With the Court's

18    indulgence, I'm coming off of that for one moment and just

19    saying that when we talk about his career -- excuse me --

20    his criminal history points, it made him a 10.  It would

21    have made him a Category 5.  He is, I believe, 10 points.

22    THE COURT:  Can I just -- as I started off, I'm

23    really actually not that very far from where I started on

24    this.  If this had just been a distribution, one

25    distribution that made him a career offender, I think you'd

2-116

1    have a terrific argument -- two small distributions when he

2    was 17.   But, here, I've got a series of distributions over

3    a period of time, at least -- we may not know exactly what

4    the drug weight is, but a series of distributions to this

5    informant before he was caught and after he was caught.   He

6    supervised at least one other guy, the Brillon kid, and was

7    involved -- at least use that word -- in a gang.

8         So, how can I say it significantly over represents

9    the seriousness of criminal history?   That's the problem I

10   have.   It isn't -- if they had just caught him on one

11   distribution, I would say you're right, I'm going to

12   downwardly depart, I do have the discretion, and I find I

13   do.   But, it's not that case.

14        MR. RAPPAPORT:   Well, I felt it was, Judge, because

15   of the significant increase that he gets as a career

16   offender -- I mean, we're talking about going from a 15 to a

17   31.   Basically, what it would ordinarily have been, even at

18   a Category 5, 37 to 46 months to 188 to 235 months.

19        THE COURT:   I agree, it's rough.

20        MR. RAPPAPORT:   It's very rough.

21        And, when one looks at what are the predicate

22   offenses that put him into that and we see the 17-year-old

23   kid, three days apart, getting these cases, it just seems to

24   me that it's not only rough, that is outside of what one

25   would consider the heartland of career offenders, to take

2-117

1   him from basically a three-year sentence up to a sentence

2   well in excess of ten years -- close to a 15-year sentence.

3           I would submit that that is rough and is outside

4   the heartland and that Mr. Mercado should be given

5   consideration as to departure, at least in terms of the

6   criminal history category, down to the criminal history

7   category 5.

8           THE COURT:  Thank you.

9           Anything you want to say briefly?

10          MR. LEVITT:  Yes, your Honor.

11          The career offender provisions were designed to be

12  rough.  They were designed to deal with recidivists like Mr.

13  Mercado.

14          I think the important thing to do when you're

15  looking at Mr. Mercado is look at both the history and what

16  he was charged with here and what the evidence is he was

17  doing throughout the period that he was charged.

18          And, in that respect, not only was he charged here

19  with a series of distributions, but the testimony is that he

20  was -- he had been providing heroin to the cooperating

21  witness for several months prior to that.  That he was

22  supplying to Sammy Guzman, he was supplying Vincente

23  Rodriguez, who were then supplying others.

24          In addition, as the Court has recognized, the

25  evidence is that he was at least a key member, the

2-118

1    government would submit.  The evidence is clean that he was

2    a leader of this Immortal Outlaw street gang, a violent

3    street gang.  And, this is consistent with his history.

4            You know, the Court has focused on these two heroin

5    distribution charges.  And, the government looks at the fact

6    that they are three days apart and takes a different view of

7    them, which is, as soon as he got out on the first one, he

8    went right back out and did what he was doing before --

9    three days later, while out on pre-trial release, he's

10   distirbuting heroin again -- the same drug that he was

11   distributing ten years later.

12           But, there are other offenses here.  And, I know

13   the Court has characterized them as relatively minor.  But,

14   the government disagrees.  And, I think the pre-trial -- I

15   think the --

16           THE COURT:  Well, I know what those are.  So ...

17           MR. LEVIT:  Okay.

18           But, I would urge the Court to read Paragraph 114

19   of the PSR, which describes one of those offenses and what

20   the defendant did, in a stolen car, crashing into two other

21   cars, driving the wrong way on a one-way street, struggling

22   with the police officer who arrested him.

23           The career offender provisions are designed for the

24   defendant with his type of history, that he's caught doing

25   the exact same thing now.

2-119

1        THE COURT:  Thank you.

2        Does he want to say anything?

3        THE DEFENDANT:  I would like to apologize to the

4   Court, first of all.  I would like to apologize to my

5   family.  I would like to say how sorry I am about this.

6        That's it, your Honor.

7        THE COURT:  I know it's a very emotional moment.

8        This is what I'm going to do.  I'm going to -- I

9   decline to downwardly depart.  I do, however, want the

10  pre-sentence report rewritten, I think, for purposes of

11  categorizing him.  You can simply say he was a member of the

12  gang and who the other members were.  I don't think you need

13  to get into the leadership or nonleadership thing.  But, I

14  think it's important for placement that they know who the

15  other members are, so the BOP can make a decision about

16  whether to place them in the same institution.

17       MS. FOSTER:  Yes, your Honor.  Just for a

18  clarification, you want leadership removed, stricken.

19       THE COURT:  Yes.  I was thinking something along

20  the lines of:  Elvin Mercado was involved in The Immortal

21  Outlaws gang in the Lawrence, Massachusetts area.  They were

22  formed in the 1990s and that he was a -- you could say he

23  was a -- you could say something like he was a trusted

24  member of the group, or something.  Maybe he's a leader,

25  maybe he isn't.  It's not important to the guideline range.

2-120

1  And they may unfairly penalize him in the system.  So, we'll

2  rewrite it that way.

3         So, I'm going to give -- decline, as I say, to

4  downwardly depart.  I am going to give the absolute lowest

5  end of the range, which I think is fully appropriate here,

6  which is 188 months' imprisonment, with a recommendation to

7  a 500-hour drug treatment program in the Boston area,

8  ideally, so he can see his daughter who I think has been

9  back there.

10         Is that correct?

11         MR. RAPPAPORT:  His daughter was here yesterday.

12  She couldn't make it today.

13         THE COURT:  She looks just like him.  So,

14  hopefully, she'll be able to visit.

15         Ninety-six months of supervised release, no fine.

16  So, hopefully, he can use that money from his business to

17  take the child support obligation to his girlfriend, and a

18  thousand dollar special assessment.

19         MS. FOSTER:  Your Honor, there's a requirement of

20  72 months of supervised release.

21         THE COURT:  Do I have the old number?  I'm sorry.

22  I have the old number.  Seventy-two months of supervised

23  release.  I think that came from the earlier.  And, then, a

24  thousand dollar special assessment.

25         I provide as a condition substance abuse treatment