UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELVIN MERCADO ) |  |
| ) |  |
| v. ) | Civil No. 04-11653-PBS |
| ) |  |
| UNITED STATES OF AMERICA ) |  |
| ) |  |

OPPOSITION OF THE UNITED STATES TO DEFENDANT'S
AMENDED MOTION UNDER 28 U.S.C. § 2255

On April 14, 2003, Elvin Mercado (the "defendant"), pled guilty, pursuant to a plea agreement with the United States, to conspiring to possess with intent to distribute and to distribute heroin; and nine substantive counts of distributing heroin. On July 22, 2003, after a two-day sentencing hearing, the Court sentenced the defendant to a term of imprisonment of 188 months. The Court concluded that, as a career offender with two prior drug trafficking convictions, the defendant's Base Offense Level under U.S.S.G. §4B1.1 was 34 and his Criminal History Category was VI. With three levels off for acceptance of responsibility, the defendant's Adjusted Offense Level was 31, leading to a guideline sentencing range of 188-235 months. The Court sentenced the defendant to the low end of the guideline range.

On December 1, 2006, the defendant filed an amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.[1] The defendant's amended motion is based on the fact

---

[1] The defendant had filed a prior motion to vacate under § 2255 claiming ineffective assistance of counsel. The government filed an opposition to that motion and incorporates by reference

that, on October 18, 2006, a state court judge granted the defendant's motion for a new trial, thus vacating his guilty pleas with regard to the two convictions that formed the basis for the defendant's federal classification as a career offender.[2] The government hereby opposes the defendant's amended motion under § 2255.

### A. The Plea Agreement

The defendant pled guilty pursuant to a plea agreement that contained the following provision.

> In consideration of the concessions made by the U.S. Attorney in this agreement, Defendant agrees not to seek to be sentenced or resentenced with the benefit of any successful collateral challenge of any counseled criminal convictions that existed as of February 17, 2003.  Defendant acknowledges and agrees that this subparagraph is a material provision of this agreement and that breach of it will entitle the U.S. Attorney to exercise any and all remedies available to him. . . .

Plea Agreement, dated April 7, 2003, ¶ 3(A) (attached as Exhibit A).

The plea agreement also contains the following pertinent provision.

> In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge . . . (2) The adoption by the District Court

---

that opposition.

[2] The amended motion does not claim or allege that the defendant's waiver in the plea agreement of his right to be resentenced with the benefit of any collateral challenge to prior criminal convictions was not knowing or voluntary.

>     at sentencing of any of the positions found in
>     paragraph 3 which will be advocated by the U.S.
>     Attorney with regard to offense conduct, adjustments
>     and/or criminal history under the U.S. Sentencing
>     Guidelines or application of minimum mandatory
>     sentences.

Id. ¶ 6.  In paragraph 3 of the plea agreement, the "parties agree to take the position that Defendant has two prior felony convictions of either a crime of violence or a controlled substance offense and therefore qualifies as a career offender." Id.  At sentencing, the Court adopted this agreement in the plea agreement that the defendant has two prior felony convictions of either a crime of violence or a controlled substance offense and therefore qualifies as a career offender.

    **B.**    **The Teeter Analysis**

Because this case involves a waiver, the starting point of the Court's analysis should be the First Circuit's decision in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001).[3]  Teeter upheld the validity of pre-sentence appellate waivers, but proscribed certain criteria for evaluating whether such waivers are rendered knowingly and voluntarily, and, in that case, found the change-of-plea colloquy insufficient.  Teeter promulgated a two-pronged test for evaluating such waivers:

---

[3] None of the cases cited by the defendant, such as Mateo v. United States, 398 F.3d 126 (1st Cir. 2005), are particularly relevant because they did not involve waivers.  Indeed, the defendant's amended motion completely ignores the explicit waiver in the plea agreement.

First:  "We look first to confirm that the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope."  Teeter, 257 F.3d at 24 (citations omitted).

Second: "Mindful that Rule 11(c)(6) specifically recognizes the importance of the change-of-plea hearing to any waiver of appellate rights, we next will examine the transcript of that hearing.  The focus of the inquiry is to ascertain whether the court's interrogation suffices to ensure that the defendant freely and intelligently agreed to waive her right to appeal her forthcoming sentence."  Id.[4]

There is little doubt that the plea agreement in this case satisfies the first prong of the Teeter test.  The waiver here "contains a clear statement elucidating the waiver and delineating its scope" and was signed by the defendant and his attorney, who certified that the defendant had read the agreement, that they had discussed its meaning, and that the attorney believed the defendant entered into the agreement "freely, voluntarily, and knowingly."  Plea Agreement p. 12.  Cf. Teeter, 257 F.3d at 26 (approving of a similar waiver and noting

---

[4] Rule 11(c)(6) provides that, during a change-of-plea hearing, the presiding judge "must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal."  Fed.R.Crim.P. 11(c)(6).

that "[t]hese desiderata furnish prima facie evidence of the appellant's knowledge and volition").

The question here is whether the change-of-plea colloquy satisfies the second prong of Teeter. The plea colloquy, under all the circumstances, including this individual defendant's knowledge of the process, "suffices to ensure that the defendant freely and intelligently agreed to waive [his] right to appeal [his] forthcoming sentence."

Teeter held that "the district court must inquire specifically at the change-of-the-plea hearing into any waiver of rights." Teeter, 257 F.3d at 24. The court further explained: "Neglecting this duty will constitute error and may serve to invalidate the waiver, depending upon what the record shows as to the defendant's knowledge (that is, whether the defendant, notwithstanding the absence of a particularized inquiry, understood the full significance of the waiver) and the existence *vel non* of prejudice." Id. (citing United States v. Bushert, 997 F.2d 1343, 1351-52 (11th Cir. 1993) (holding that "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver").

However, the court explicitly declined to prescribe any

mandatory language to be employed in the change-of-plea colloquy "because the circumstances will vary from case to case, from defendant to defendant. . . . We caution only that the court's interrogation should be specific enough to confirm the defendant's understanding of the waiver and her acquiescence in the relinquishment of rights that betokens." Id. at 24 n.7.[5] See also United States v. Richardson, 2006 WL 2930142 *1 (4th Cir.)(W.Va.) ("waiver is ineffective if the district court fails to question the defendant about it, unless other evidence in the record shows that the waiver was informed and voluntary") (internal citation omitted).

At the outset of the colloquy in this case, the court addressed the defendant as follows with respect to the plea agreement.

> THE COURT:  And did you read the plea agreement?
>
> THE DEFENDANT:  Yes, I did.
>
> . . . .
>
> THE COURT:  And that handwriting in fact is yours on the plea agreement?
>
> THE DEFENDANT:  Yes, it is.

---

[5] Cf. United States v. Ciampi, 419 F.3d 20 (1st Cir.2005) (upholding waiver, in the absence of a particularized inquiry, where among other things, the government recited in open court all the terms of the plea agreement and the court asked the defendant "are those the terms of your agreement with the government as you understand them?").

>THE COURT:  And did you go over that with your attorney?
>
>THE DEFENDANT:  Yes, I did.

See Rule 11 Hearing, dated April 14, 2003, at 5 (attached hereto as Exhibit B).

The Court subsequently made further, related inquiry of the defendant.

>THE COURT: Have you been satisfied with the representation of your attorney?
>
>THE DEFENDANT:  Yes.
>
>THE COURT: Do you feel in any way that he's pressured you into pleading guilty?
>
>THE DEFENDANT: NO.
>
>THE COURT: Has he answered all your questions?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Has he gone through the indictment and the plea agreement with you?
>
>THE DEFENDANT:  Yes, he has.

Id. at 7.

It is not clear from the record precisely what the district court said during the plea colloquy in Teeter.  It is clear that, as in this case, the district court did not explicitly direct the defendant's attention to the waiver provision.  Teeter, 257 F.3d at 26.  The court also noted that the district court inquired generally about the defendant's understanding of the plea agreement, but it is not clear whether the district court in that case asked the defendant, as it did here, whether he had gone

7

over the agreement with his attorney and whether his attorney had answered all his questions concerning the agreement.

Moreover, in <u>Teeter</u>, the district court explicitly misstated the terms of the plea agreement with respect the right to appeal, which misstatement was left uncorrected.  The <u>Teeter</u> court explained.

> Compounding the problem, the court, near the end of the Rule 11 colloquy, asked the appellant: "[D]o you also understand that both you and the government will have a right to appeal any sentence I impose?  This unqualified query-to which the prosecutor (not the same person who appears as counsel for the government in this court) inexplicably failed to take exception-drew and affirmative response from the appellant.  The premise of the question directly contradicted the tenor of the waiver provision.

<u>Teeter</u>, 257 F.3d at 26-27.

The court then concluded:  "Given the court's failure to make inquiry into the waiver, <u>its unfortunate contradiction of the waiver's terms, and the lack of any correction</u>, then or thereafter, we cannot say with the requisite assurance that the appellant's surrender of her appellate rights was sufficiently informed."  <u>Id.</u> at 26 (emphasis added).

It is clear that the district court's uncorrected misstatement of the defendant's right to appeal played a large role in the First Circuit's decision in <u>Teeter</u>.  In contrast, in this case, the court correctly advised the defendant only that he had a right to appeal a sentence that is harsher than the plea agreement.  The Court asked the defendant: "[T]o the extent that

8

I impose a sentence that's harsher than the plea agreement, you have a right to appeal. Do you understand?" The defendant responded in the affirmative. Id. at 16. This is consistent with the waiver provision of the plea agreement and the negative implication is that, to the extent that the Court imposes a sentence that is *not* harsher than the plea agreement, the defendant does not have the right to appeal.

Consistent with the First Circuit's conclusion that no magic language is required in the plea colloquy, and that the evaluation will vary from case to case, from defendant to defendant, the Court should consider, in evaluating whether the waiver was intelligent and knowing, the particular circumstances of this defendant -- Elvin Mercado. See Richardson, 2006 WL 2930142 *1 ("Whether a waiver of the right to appeal is knowing and intelligent depends upon the facts and circumstances surrounding its making, including the defendant's background, experience, and conduct.") (citing United States v. Davis, 954 F.2d 182, 186 (4th Cir.1992)).

In this case, the defendant's background, experience, and conduct, when combined with the explicit waiver language of the plea agreement, and the plea colloquy, militate in favor of a finding that the waiver was knowing and intelligent. The defendant in this case has successfully vacated two prior state court convictions from 1994 on the grounds that his plea was not

knowing and intelligent -- i.e., the same claim he is making here. In his affidavit in support of his successful motion for a new trial in state court, the defendant avers at length that, on the day of his 1994 plea, he was confused, desperate for drugs, and that his lawyer did not discuss any of his rights or the implications of the plea with him. See Affidavit of Elving Mercado, dated July 13, 2006 ¶¶ 12-23 (attached as part of Exhibit C to the defendant's second amended motion under 28 U.S.C. § 2255).

Of particular note, the defendant recounts a story in his affidavit about what happened immediately after he tendered his plea. He avers that, on the day of his plea, he thought he was pleading to only one charge. Id. ¶ 20. He avers that, later, he recalls discussing his case with an inmate at the Billerica House of Corrections, who he describes as an "older white male in his 40s who seemed to know a good amount of information about the law." Id. ¶ 21. He further avers that this inmate looked at the defendant's papers and advised the defendant that he had pled to two charges not one. Id. ¶ 21-22. The defendant describes his surprise and his chagrin that day when he learned for the first time that he had pled to two charges not one. Id. ¶¶ 22-24.

Now, 13 years later, the defendant is claiming essentially that the same thing happened with his plea in this case that happened in that 1994 case. That is, that he again pled guilty

10

without really knowing what he was doing, without discussing the terms or implications of the plea agreement with his attorney, without knowing what his plea agreement explicitly said. In light of his allegedly formative experience in 1994, it is simply not credible that the defendant would simply walk into federal court and again plead guilty -- this time to serious federal charges -- without knowing the implications of his plea.

Tow additional cases from the Sixth Circuit and the Tenth Circuit are instructive with regard to the issue of the validity of the plea colloquy. In <u>United States v. Murdock</u>, 398 F.3d 491, 498 (6th Cir. 2005), which involved a plea agreement with an appellate waiver, the court reasoned as follows:

> We emphasize that in the absence of an inquiry into the appellate waiver by the district court as required under the rule, some other event could suffice to insure that Defendant's waiver was knowing and voluntary. . . . *It might, for example be sufficient for a defendant to assure the district court that he has reviewed the waiver provision (or at a bare minimum the plea agreement) with his attorney and that his attorney has explained it.*

<u>Murdock</u>, 398 F.3d at 498. The court ultimately declined to uphold the waiver because "[d]uring the plea colloquy, the district court did not did not discuss with Murdock the waiver provision of his plea agreement[,]" [a]t the request of the court, the prosecutor summarized the terms of the plea agreement, without mentioning the waiver provision[,]" and the "district court never asked Murdock if he had been given an opportunity to

11

read over the plea agreement and to discuss it with his attorney." Id. at 494.

In contrast, in this case, the Court, *on two separate occasions*, asked the defendant if he had gone over the plea agreement with his counsel, asked the defendant if he had read the plea agreement, confirmed his signature on the agreement, and also asked the defendant if his counsel had answered all his questions. In response to each question, the defendant answered in the affirmative. Rule 11 Hearing at 5, 7.

The Tenth Circuit's decision in United States v. Edgar, 348 F.3d 867, 872 (10th Cir. 2003), is also helpful. In that case, the court began by noting that the defendant "waived his right to appeal direct and to challenge collaterally his "guilty plea and any other aspect of his conviction" and his sentence as imposed by the Court and the manner in which is determined." Edgar, 348 F.3d at 869. The court found that "the district court committed an error, which was plain, by failing to discuss Mr. Edgar's waiver of appellate rights." Id. at 872.

The Tenth Circuit concluded, however, as follows:

> Mr. Edgar knowingly and voluntarily waived his right to direct appeal. First, the plea agreement-in plain language-explains the waiver of appellate rights. The plea agreement clearly states that Mr. Edgar waives his right to appeal and to challenge collaterally his "guilty plea and any other aspect of his conviction" and his "sentence as imposed by the Court and the manner in which the sentence is determined." Second, the signature section of that agreement reads,"By signing this agreement,

> defendant acknowledges that he has discussed its terms with his attorney and understands and accepts those terms." Third, Mr. Edgar attested in his petition to enter a plea of guilty that he (1) had sufficient time to discuss his case with his attorney and (2) entered into the plea agreement voluntarily. Fourth, during the plea colloquy, Mr. Edgar stated that he entered into the agreement "voluntarily and completely of [his] own free choice," that the plea agreement accurately reflected his agreement with the government, and that he was fully satisfied with the services of his attorney.

Id. at 872 (citing United States v. Rubio, 231 F.3d 709, 712 (10th Cir.2000) (finding that a waiver was knowing and voluntary based, in part, on statements made by the defendant during the plea colloquy).

The Court went on to hold as follows:

> [B]ecause he knowingly and voluntarily entered into the plea agreement, the district court's failure to discuss the waiver did not affect Mr. Edgar's substantial rights. . . . Edgar fails to satisfy the third prong of the plain error review, we have no occasion to decide whether the error below seriously affected the fairness, integrity, or public reputation of judicial proceedings.

Id. at 873.

For the foregoing reasons, this Court should conclude that the defendant's waiver of his right to be resentenced with the benefit of any successful collateral challenge of any counseled criminal convictions was knowing and voluntary.

### C. The Status of the State Case

The government has been advised that, on January 12, 2007, Middlesex District Attorney's Office filed a motion to reconsider the court's granting of the new trial relating to the defendant's two predicate convictions. A hearing is scheduled for January 23, 2007, on the state's motion.

The defendant's state court motion for a new trial was filed on October 16, 2006, and was allowed by the state court judge (Judge Allen J. Jarasitis) on October 18, 2006, before the District Attorney's Office had an opportunity to respond. Indeed, the first notice of the motion that the District Attorney's Office apparently received was when it received notice that the motion had been allowed. See Exhibit D to the defendant's memorandum in support.

There has therefore never been a fair hearing, where both parties are represented, with respect to the defendant's motion for a new trial. Accordingly, the government requests that this Court delay any decision on the instant motion until the state court matter is resolved.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>By:  s/ PETER K. LEVITT
>     PETER K. LEVITT
>     Assistant U.S. Attorney

January 19, 2007