IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff            )
                                     )
        -VS-                         )  Criminal No. 02-10259-PBS
                                     )  Pages 1 - 31
ELVIN MERCADO,                       )
                                     )
                Defendant            )

**RULE 11 HEARING**

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

    PETER LEVITT, ESQ., Assistant United States Attorney,
Office of the United States Attorney, 1 Courthouse Way,
Boston, Massachusetts, 02210, for the Plaintiff.

    STEVEN J. RAPPAPORT, ESQ., Rappaport & Delaney,
228 Central Street, Lowell, Massachusetts, 01852, for the
Defendant.

                        United States District Court
                        1 Courthouse Way, Courtroom 13
                        Boston, Massachusetts
                        April 14, 2003, 4:00 p.m.

                LEE A. MARZILLI
        CERTIFIED REALTIME REPORTER
        United States District Court
        1 Courthouse Way, Room 3205
            Boston, MA  02210
            (617)345-6787

1                    P R O C E E D I N G S

2              THE CLERK:  The case of the United States Vs. Elvin

3    Mercado, Criminal Action No. 02-10259, will now be heard

4    before this Court.  Will counsel please identify themselves

5    for the record.

6              MR. LEVITT:  Good afternoon, your Honor.  Peter

7    Levitt on behalf of the United States.

8              THE COURT:  Good afternoon.

9              MR. RAPPAPORT:  Steven Rappaport on behalf of Elvin

10   Mercado.

11             THE COURT:  Why are we here today, Mr. Rappaport?

12             MR. RAPPAPORT:  A change of plea.

13             THE COURT:  All right.  Mr. Alba?

14             THE CLERK:  Will the defendant please stand.

15   Mr. Elvin Mercado, you have previously pled "not guilty" to

16   Count 1 of an indictment charging you with conspiracy to

17   distribute heroin, in violation of Section 21, United States

18   Code, Section 846, and to Counts 2, 3, 5 through 10, and 12

19   of an indictment charging you with distribution of heroin, in

20   violation of Section 21, United States Code,

21   Section 841(a)(1).  Do you now wish to change your plea?

22             THE DEFENDANT:  Yes.

23             THE COURT:  What say you to Counts 1, 2, 3, 5

24   through 10, and 12 of the indictment, are you guilty or not

25   guilty?

```
 1              THE DEFENDANT:  Guilty.

 2              THE CLERK:  Thank you.  Please take the witness

 3    stand, sir.  Counsel, you can accompany him.

 4              MR. RAPPAPORT:  Thank you.

 5              (Defendant duly sworn.)

 6              THE COURT:  Good afternoon.

 7              THE DEFENDANT:  Good afternoon.

 8              THE COURT:  Do you understand that the reason why I

 9    encourage your attorney to be right next to you is so that at

10    any point you can ask him a question?  Do you understand

11    that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Put your hand over the mike if you want

14    to talk to your lawyer, okay?

15              THE WITNESS:  Okay.

16              THE COURT:  And the other thing is that at any

17    point you wish, you can stop this and say, "I don't want to

18    do this, I want to go forward to court."  Do you understand

19    that?

20              THE DEFENDANT:  Okay.

21              THE COURT:  Do you understand that you're now under

22    oath, and if you answer any of my questions falsely, your

23    answers may later be used against you in another proceeding

24    for perjury for making a false statement?

25              THE DEFENDANT:  Yes.
```

```
 1                THE COURT:  What's your full name?

 2                THE DEFENDANT:  Elvin Mercado.

 3                THE COURT:  Do you have any aliases?

 4                THE DEFENDANT:  I got arrested.  I have an alias

 5    one time when I was 17 years old.

 6                THE COURT:  What was it?

 7                THE DEFENDANT:  Richard Cruz.

 8                THE COURT:  Cruz?

 9                THE DEFENDANT:  Yes.

10                THE COURT:  Are you also known as Chino?

11                THE DEFENDANT:  Yes.

12                THE COURT:  Are there any other nicknames like

13    that?

14                THE DEFENDANT:  No.

15                THE COURT:  How old are you?

16                THE DEFENDANT:  I'm twenty-six.

17                THE COURT:  Why don't you pull that mike in.  I'm

18    having a little trouble hearing.  How old?

19                THE DEFENDANT:  Twenty-six.

20                THE COURT:  Twenty-six years old.  How far did you

21    go in school?

22                THE DEFENDANT:  To the junior.

23                THE COURT:  Year of high school?

24                THE DEFENDANT:  Yes.

25                THE COURT:  Where did you go to high school?
```

```
 1                THE DEFENDANT:  Lawrence High.

 2                THE COURT:  Can you read and write English?

 3                THE DEFENDANT:  Yes.

 4                THE COURT:  And did you read the plea agreement?

 5                THE DEFENDANT:  Yes, I did.

 6                THE COURT:  And you read the indictment against

 7    you?

 8                THE DEFENDANT:  Yes, I did.

 9                THE COURT:  And that handwriting in fact is yours

10    on the plea agreement?

11                THE DEFENDANT:  Yes, it is.

12                THE COURT:  And did you go over that with your

13    attorney?

14                THE DEFENDANT:  Yes, I did.

15                THE COURT:  Have you ever been treated for any

16    mental illness or addiction to narcotic drugs?

17                THE DEFENDANT:  Yes, I did.  Yes, I have.

18                THE COURT:  Tell me about it.

19                THE DEFENDANT:  I've been -- I have done drugs

20    since I was fourteen, thirteen years old, and I've been to

21    drug programs.  I've been to a mental health facilities.

22                THE COURT:  Let's start with the drug addiction.

23    When was the last time you had a program for any drug

24    addiction?

25                THE DEFENDANT:  The last time I was in a drug
```

1    program, I came out of prison, jail, and I was out for

2    30 days.  And I ended picking up another case, and from that

3    case, I went to jail for a couple of months.  And I went from

4    Lawrence District Court to a Christian drug program for six

5    months.

6            THE COURT:  Do you currently have an addiction?

7            THE DEFENDANT:  No.

8            THE COURT:  Are you currently going through any

9    kind of withdrawal right now or anything?

10           THE DEFENDANT:  No.

11           THE COURT:  Do you feel okay?

12           THE DEFENDANT:  Excuse me?

13           THE COURT:  Do you feel all right?

14           THE DEFENDANT:  Yes, I feel all right.

15           THE COURT:  All right, what about mental health

16    treatment?

17           THE DEFENDANT:  I have been an in-house patient

18    when I was in the sixth grade for attempted suicide, and I

19    did six -- uhm, two months in the Waltham Children's

20    Hospital.

21           THE COURT:  All right.  And do you have any drugs

22    right now that you're taking that are prescribed by a doctor

23    for depression or anything like that?

24           THE DEFENDANT:  No.

25           THE COURT:  Are you feeling depressed or suicidal

1    in the jail now?

2            THE DEFENDANT:  No.

3            THE COURT:  Are you currently under the influence

4    of any drugs or medications other than for mental health

5    purposes?

6            THE DEFENDANT:  No.

7            THE COURT:  Have you been satisfied with the

8    representation of your attorney?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Do you feel in any way that he's

11    pressured you into pleading guilty?

12            THE DEFENDANT:  No.

13            THE COURT:  Has he answered all your questions?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Has he gone through the indictment and

16    the plea agreement with you?

17            THE DEFENDANT:  Yes, he has.

18            THE COURT:  Has anyone made any representations to

19    you about what my sentence will be?

20            THE DEFENDANT:  No.

21            THE COURT:  Do you understand I don't have to

22    follow the plea agreement?

23            THE DEFENDANT:  Uh-huh.

24            THE COURT:  Is that "yes"?

25            THE DEFENDANT:  Yes.

1          THE COURT:  Has anyone made any promises or threats

2     to you to get you to plead guilty apart from the promises in

3     the plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you understand that by pleading

6     guilty to a felony offense, you will be deprived of certain

7     civil rights, such as the right to vote, to hold public

8     office, to serve on a jury, and to possess firearms?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Are you a citizen?

11         THE DEFENDANT:  Yes, I am.

12         THE COURT:  Will the government state the penalties

13    to be imposed.

14         MR. LEVITT:  Yes, your Honor.  Your Honor, under

15    the plea agreement, the parties have agreed to argue at

16    sentencing the issue of the amount of drugs involved

17    attributable to the defendant, so that the maximum penalties

18    has something to do with that finding.

19         With respect to Count 1, the conspiracy count, if

20    the Court finds that at least 100 grams of heroin are

21    attributable to the defendant, he faces a maximum term of

22    imprisonment of life and a ten-year mandatory minimum, a fine

23    of up to $4 million, at least an eight-year term of

24    supervised release and a maximum of life, and a $100 special

25    assessment.

1           If the Court finds that less than 100 grams of

2    heroin are attributable to the defendant with respect to

3    Count 1, the defendant faces a maximum term of imprisonment

4    of 30 years, a fine of up to $2 million, at least a six-year

5    term of supervised release and a maximum of life, and a $100

6    special assessment.

7           With respect to --

8           THE COURT:  So under either --

9           MR. RAPPAPORT:  No mandatory minimum.  If the Court

10   were to determine less than 100 grams attributable to

11   Mr. Mercado, there would be no mandatory minimum.

12          THE COURT:  So under either theory, is the

13   statutory maximum life?

14          MR. LEVITT:  No.  Under the latter theory, if it's

15   under 100 grams, the statutory maximum is 30 years.

16          THE COURT:  Okay, but let's walk through for me for

17   a second Apprendi.  If he's not going to plead to a drug

18   amount and it changes the statutory maximum, how do I do

19   this?

20          MR. LEVITT:  In the plea agreement, the defendant

21   agrees to waive any arguments he might have under Apprendi or

22   under Section 2D1.1 of the Guidelines with respect to drug

23   amount, so --

24          THE COURT:  Where is that?

25          MR. LEVITT:  That's on Page 3 at the top.

 1              THE COURT:  Have you talked to him about the fact

 2    that he's entitled to a jury verdict on the issue of drug

 3    amount?

 4              MR. RAPPAPORT:  Yes, your Honor, but --

 5              THE COURT:  I think.

 6              MR. RAPPAPORT:  Well, he would be entitled to a

 7    jury verdict, but, your Honor, I personally, having dealt

 8    with the probable cause issue earlier in this case, I think

 9    it's pretty clear, and that's why my client had asked me, and

10    I totally agree with him, that with regard to drug amount, we

11    should allow the Court to make this determination at

12    sentencing.  I personally think it's clear that it's not

13    going to be over 100 grams, but --

14              THE COURT:  Well, I don't know.  I mean, I'm seeing

15    you for the first time.  Let me just ask, do you understand

16    that you have a right to a jury trial on that issue?

17              THE DEFENDANT:  Yes, I do.

18              THE COURT:  And do you understand that I'll listen

19    to the evidence, we'll hold an evidentiary hearing, there

20    will be witnesses that you'd want to subpoena?  I mean, we'll

21    go through a full-blown hearing, but it will be me, not a

22    jury, that makes that decision.  Do you understand that?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And also do you understand that if I

25    decide it, I decide it under a standard that we call

1    "preponderance of the evidence," which means the government

2    has to prove that it is more likely true than not true

3    that -- what are you claiming, 300?

4         MR. LEVITT:  100 grams.

5         THE COURT:  -- more likely true than not true that

6    the government's position is correct?  Whereas, if you went

7    to trial before a jury, it would be proof beyond a reasonable

8    doubt.  Do you understand that?

9         THE DEFENDANT:  Yes.

10         THE COURT:  Do you draw some other distinction I'm

11    not thinking of right now?

12         MR. LEVITT:  No, your Honor.  I would point out

13    that because the defendant is a career offender, the issues

14    on sentencing depend more on that than drug weight.

15         MR. RAPPAPORT:  There were some practical

16    considerations here, your Honor.  Certainly early on in this

17    case, if I were to look at the case and say, "Well, maybe I

18    should try this case," I felt that there were issues I might

19    be able to win on.  But in prevailing on those issues, I

20    wouldn't necessarily be helping my client in terms of

21    eventual sentencing, and a lot of that has to do with his

22    career offender status.

23         THE COURT:  Well, given the career offender status,

24    assuming that I find it's --

25         MR. RAPPAPORT:  The difference between 30 years and

 1   the life is what -- it's a two-point difference.

 2        MR. LEVITT:  There is a provision in the plea

 3   agreement that spells this out, your Honor.  It's on Page 2.

 4   It's 3-A.  It deals with the base offense level.

 5   Essentially, under the career offender provisions, if the

 6   Court finds that the defendant is responsible for at least

 7   100 grams of heroin, his base offense level would be 34 and

 8   his criminal history category would be 6.  If the Court finds

 9   that the defendant is responsible for less than 100 grams,

10   his base offense level would be 32 and his criminal history

11   category would be 6.

12        THE COURT:  So it makes a difference, but it's not

13   that dramatic.

14        MR. LEVITT:  It's not as dramatic as it might

15   otherwise be.

16        THE COURT:  But, in any event, do you understand

17   you'd be entitled to a jury trial and proof beyond a

18   reasonable doubt on drug amount, and you're giving that up?

19        THE DEFENDANT:  Yes.

20        THE COURT:  All right.  So do you plead guilty that

21   it's at least. . .  Is there any amount --

22        MR. RAPPAPORT:  No, no.

23        MR. LEVITT:  There's no maximum minimum.

24        THE COURT:  There's no maximum minimum amount, all

25   right, so we'll go past that.

1          MR. LEVITT:  I hadn't --

2          THE COURT:  All right, go ahead.

3          MR. LEVITT:  The maximum is on the remaining

4    counts, which are Counts 2, 3, 5, 6, 7, 8, 9, 10 and 12.

5    Pursuant to the plea agreement, the parties have agreed that

6    Counts 4 and 11 be dismissed.  But with respect to those

7    counts, the maximum term of imprisonment is 30 years.  There

8    is a maximum fine of $2 million, at least a six-year term of

9    supervised release and a maximum of life, and a $100 special

10   assessment.

11         THE COURT:  All right, and what about the

12   forfeiture?

13         MR. LEVITT:  There is also a forfeiture count.

14         THE COURT:  What are you looking for?

15         MR. LEVITT:  I can't recall if we've listed any

16   specific property in the indictment.  I actually gave my copy

17   of the indictment to Mr. --

18         MR. RAPPAPORT:  I don't think so.

19         MR. LEVITT:  At this point we have not identified

20   any specific property.  We may before sentencing, but that's

21   just a question of what we can identify at that point.

22         THE COURT:  So at some point he's got to plead to

23   something.

24         MR. LEVITT:  Well, I think, your Honor, he's

25   pleading to the general forfeiture counts.  If there is an

1    issue as to whether specific property that is subsequently

2    identified is actually forfeitable, I think that would be

3    open at sentencing.

4              MR. RAPPAPORT:  We can leave that open for

5    sentencing.

6              THE COURT:  Well, except let me just do this.  I

7    don't think I'm going to take a plea on a criminal

8    forfeiture.  Usually there's a car, there's a house, there's

9    something, and everybody agrees, yes, that was purchased with

10   drug proceeds.  I don't think I can take a plea and be

11   strapped.

12             MR. LEVITT:  Well, I mean, I think you can --

13             THE COURT:  I'm not going to take the plea on the

14   criminal forfeiture, but I'm going to leave that open.  And

15   if you find a piece of property that you want to go for, then

16   I'll take the plea at the moment, or not.

17             MR. LEVITT:  That's fine.

18             THE COURT:  So with respect to -- let me go through

19   the constitutional rights that you're giving up by pleading

20   guilty.  Do you understand you have a right to plead

21   "not guilty" to these offenses?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  Do you understand that you have a right

24   to a trial by jury --

25             THE DEFENDANT:  Yes.

1          THE COURT:  -- concerning each one?  Do you

2    understand that the jury would have to decide unanimously

3    beyond a reasonable doubt that you're guilty on each and

4    every one of the charges?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that you are giving

7    up the presumption of innocence?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand you don't have to

10   introduce any evidence at all?

11         THE DEFENDANT:  Yes.

12         THE COURT:  The burden is always on the

13   government.  Do you understand that?

14         THE DEFENDANT:  Uh-huh.

15         THE COURT:  Do you understand that you have the

16   privilege against self-incrimination, which means you don't

17   have to testify against yourself?

18         THE DEFENDANT:  Yes.

19         THE COURT:  On the other hand, do you understand

20   you could testify on your own behalf if you wanted to?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand you could subpoena

23   witnesses on your own behalf and cross-examine witnesses

24   against you?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Knowing all these very important

2    issues, do you still want to plead guilty?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You have to force the government to

5    prove beyond a reasonable doubt and get a unanimous jury

6    verdict.  Do you know that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that I'm not required

9    to follow the plea agreement?  I mentioned that earlier.  Do

10   you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And I will send this down to the

13   Probation Department, which will make a recommendation under

14   the Sentencing Guidelines as to what your sentence should

15   be.  Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And we'll hold a hearing at that point,

18   and I'll impose a sentence after I hear your attorney's

19   arguments and the government's arguments.  Do you understand

20   that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And to the extent that I impose a

23   sentence that's harsher than the plea agreement, you have a

24   right to appeal.  Do you understand?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Or simply because you disagree with my

2     sentence does not at that point give you the right to

3     withdraw your guilty plea.  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  I'm going to ask the government to go

6     through what it would prove.  Now, listen carefully.  I'm

7     going to ask you if you agree.

8          MR. LEVITT:  Your Honor, with respect to Count 1 of

9     the indictment which alleges a conspiracy to distribute

10    heroin, the government would show that the defendant was a

11    heroin trafficker in the Lawrence, Massachusetts, area.

12    Specifically, the government would show that by in or about

13    June, 2001, the defendant entered into an agreement, whether

14    explicit or implicit, with Jason Brillon and others to

15    distribute heroin.  The government would show that Jason

16    Brillon was one of the defendant's distributors of heroin.

17          The government would show that during the course of

18    the investigation, a cooperating witness made at least nine

19    hand-to-hand purchases of heroin from the defendant, either

20    directly or through one of the defendant's distributors such

21    as Jason Brillon.  The government would show that

22    approximately 20 grams of heroin were purchased from the

23    defendant directly in this fashion.  The government would

24    also show that the conspiracy, the overall conspiracy,

25    involved at least 100 grams of heroin.

1           Each of the purchases of heroin that are enumerated

2    in the indictment, Counts 1 through 3, 5 through 10, and 12,

3    were set up generally through one or more consensually

4    recorded telephone calls between the cooperating witness and

5    the defendant.  Each of the buys was surveilled by law

6    enforcement agents and tape-recorded.  For example, with

7    respect to Count 9, on February 19, 2002, a cooperating

8    witness bought 1.1 grams of heroin from the defendant and

9    Jason Brillon.

10           THE COURT:  Which one is that?

11           MR. LEVITT:  This is Count 9.

12           THE COURT:  You know, can we go in order?

13           MR. LEVITT:  Sure.  Your Honor, what I was going to

14   do was simply summarize the overall counts and then give a

15   specific example of going through Count 9, but I can go

16   through each one generally and then give a more detailed --

17           THE COURT:  Do it count by count so I make sure

18   that people aren't just blanket pleading, that they focus on

19   each count, because each one counts.

20           MR. LEVITT:  That's fine.  I gave my copy to --

21           THE COURT:  Yes, there you go.

22           MR. LEVITT:  With respect to Count 2, the

23   government would show that on or about January 24, 2002 --

24           THE COURT:  Do you have it right there in front of

25   you?

1          MR. RAPPAPORT:  Yes, we have the indictment in

2     front of us.

3          MR. LEVITT:  -- in Lawrence, a cooperating witness

4     made a consensually recorded call to the defendant and

5     arranged to purchase approximately 1 gram of heroin from the

6     defendant.  The cooperating witness went to the defendant's

7     home by agreement at 158 Butler Street in Lawrence, where the

8     defendant sold the cooperating witness approximately 1 gram

9     of heroin.  The cooperating witness wore a tape recorder

10    during this transaction, and the conversations concerning

11    that sale were recorded.

12         THE COURT:  You have it right in front of you.  Do

13    you plead guilty?  Do you disagree with anything about

14    Count 2?

15         THE DEFENDANT:  No.

16         THE COURT:  Do you plead guilty to Count 2?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Count 3.

19         MR. LEVITT:  With respect to Count 3, the

20    government would show that on or about January 28, 2002, a

21    cooperating witness again made a consensually recorded call

22    to the defendant for the purpose of making another buy of

23    heroin.  The cooperating witness asked to buy approximately

24    1 gram of heroin.  The defendant agreed.  The cooperating

25    witness again met the defendant at 158 Butler Street and

1      again purchased 1 gram of heroin from the defendant.

2               THE COURT:  And do you disagree with that?

3               THE DEFENDANT:  No.

4               THE COURT:  Do you plead guilty that on January 28,

5      2002, in Lawrence, you did distribute heroin?

6               THE DEFENDANT:  Yes.

7               THE COURT:  All right, moving to Count 4.

8               MR. LEVITT:  Count 4 is one of the counts that the

9      government is going to dismiss pursuant to the plea

10     agreement.

11              THE COURT:  Okay.

12              MR. LEVITT:  With respect to Count 5, were the case

13     to go to trial, the government would prove that on or about

14     January 30, 2002, a cooperating witness again made a

15     consensually recorded call to the defendant for the purpose

16     of buying approximately 1 gram of heroin.  The parties agreed

17     to meet at 158 Butler Street, where the defendant sold the

18     cooperating witness approximately 1 gram of heroin.

19              THE COURT:  Do you disagree with that?

20              THE DEFENDANT:  No.

21              THE COURT:  Do you plead guilty to Count 5 that on

22     or about January 30, 2002, in Lawrence, you did distribute

23     heroin?

24              THE DEFENDANT:  Yes.

25              MR. LEVITT:  With respect to Count 6, the

1    government would prove that on or about February 4, 2002, the

2    cooperating witness made a consensually recorded call to the

3    defendant, asked the defendant if he could purchase

4    approximately 1 gram of heroin.  The defendant agreed.  They

5    agreed to meet at 158 Butler Street.  Under surveillance, the

6    cooperating witness went to 158 Butler Street, where he was

7    seen entering the home and where the defendant sold him

8    approximately 1 gram of heroin.

9         THE COURT:  Do you disagree with that?

10        THE DEFENDANT:  No.

11        THE COURT:  Do you plead guilty to Count 6 that on

12   or about February 4, 2002, in Lawrence, you did distribute

13   heroin?

14        THE DEFENDANT:  Yes.

15        MR. LEVITT:  With respect to Count 7, the

16   government would show that on or about February 7, 2002, the

17   defendant and the cooperating witness had a telephone

18   conversation recorded.  They subsequently agreed to meet at

19   158 Butler Street.  At that time the defendant sold the

20   cooperating witness approximately 1 gram of heroin.

21        THE COURT:  Do you disagree with any of it?

22        THE DEFENDANT:  No.

23        THE COURT:  So do you plead guilty to Count 7 that

24   you distributed heroin on February 7?

25        THE DEFENDANT:  Yes.

1          MR. LEVITT:  Count 8, were this case to go to

2     trial, the government would show that on or about

3     February 13, 2002, the cooperating witness made a

4     consensually recorded phone call to the defendant and asked

5     to buy approximately 1 gram of heroin.  The defendant and the

6     cooperating witness agreed to meet later that day.  The

7     defendant sold the cooperating witness approximately 1 gram

8     of heroin.

9          THE COURT:  Do you plead guilty to Count 8 that you

10    distributed heroin on February 13?

11          THE DEFENDANT:  Yes.

12          MR. LEVITT:  With respect to Count 9, were this

13    case to go to trial, the government would show that on or

14    about February 19, 2002, a cooperating witness called the

15    defendant during the evening and had a consensually recorded

16    call and asked to purchase 10 bundles of heroin.  The

17    defendant said he was going to send Jason to get the heroin.

18    The cooperating witness was provided with $900 by agents and

19    sent to meet the defendant at 158 Butler Street in Lawrence.

20    Prior to the cooperating witness arriving at 158 Butler

21    Street, surveillance agents saw an individual identified as

22    Jason Brillon pull up to the house, go into the house briefly

23    and come out.  During the call setting up the transaction,

24    the defendant had said, again, that Mr. Brillon would bring

25    the heroin.  When the cooperating witness arrived at the

1    house, the defendant told him that he didn't have the full

2    10 bundles; he only had 9 bundles.  He sold the cooperating

3    witness the 9 bundles for $900, and it's certified as

4    (Inaudible) grams of heroin.

5                THE COURT:  Do you plead guilty to Count 9 that on

6    February 19, 2002, you distributed the heroin?

7                THE DEFENDANT:  Yes.

8                MR. LEVITT:  With respect to Count 10, the

9    government would show that on or about February 21, 2002, a

10   cooperating witness made a consensually recorded call to

11   Mr. Mercado.  They agreed that the defendant would sell the

12   cooperating witness approximately 1.4 grams of heroin.  The

13   cooperating witness went to the defendant's house, where in

14   fact the defendant sold the cooperating witness 1.4 grams of

15   heroin.

16               THE COURT:  What's the aiding and abetting?

17               MR. LEVITT:  During some of the transactions, other

18   individuals were involved.  Occasionally an individual named

19   Jason Brillon was involved.

20               THE COURT:  In this one, you just have him selling

21   directly, correct?

22               MR. LEVITT:  This one was direct.

23               THE COURT:  Do you plead guilty to distributing

24   heroin on February 21, 2002?

25               THE DEFENDANT:  Yes.

1            MR. LEVITT:  Count 11 is one of the counts to be

2   dismissed.

3            With respect to Count 12, on or about February 26,

4   2002, a cooperating witness made a consensually recorded call

5   to the defendant, and they agreed that the defendant would

6   sell the cooperating witness approximately 1.1 grams of

7   heroin.  The cooperating witness went to the home of the

8   defendant, where in fact the defendant sold him 1.1 grams of

9   heroin.

10           THE COURT:  Do you plead guilty to Count 12?

11           THE DEFENDANT:  Yes.

12           THE COURT:  We'll reserve on the forfeiture

13  allegation to see if there's a specific piece of property or

14  substitute property that you seek to forfeit.  So do you

15  understand that's not being dismissed?  I'll have to address

16  at sentencing what we want to do with that.

17           THE DEFENDANT:  Yes.

18           THE COURT:  Or before then.  If you find something

19  before then, it falls back in.

20           Now, on the conspiracy, I haven't taken a plea to

21  that yet.  What's the evidence that he conspired with

22  Brillon?  Is it just that one count?

23           MR. LEVITT:  No.  There are other counts where

24  there are conversations between the cooperating witness and

25  the defendant where the defendant talks about Brillon being

1  involved.  In addition, with respect to Count 5, Brillon was

2  present during the transaction that took place at 158 Butler

3  Street.  He's not charged substantively with it, but he was

4  there during that transaction.  There's another transaction

5  where, similar to Count 9, there's discussions between the

6  cooperating witness and the defendant in which the defendant

7  talks about sending Jason to get the drugs.  That's the basis

8  for the conspiracy count.

9         THE COURT:  And I imagine that's going to be the

10 heart of what we talk about in the -- is it the drugs

11 attributed to Jason that you're seeking to attribute to him

12 beyond to get him over the 100?

13        MR. LEVITT:  No, your Honor.  It's -- really, that

14 would be more of an issue for Brillon.  The information the

15 government would submit at sentencing would have to do with

16 historical information from confidential sources about the

17 historical drug trafficking of the defendant.

18        THE COURT:  All right, so it's not -- many of these

19 things arise because the conspirator sells the stuff.  That's

20 not really what you're talking about?

21        MR. LEVITT:  No.

22        THE COURT:  Do you plead guilty in Count 1 to

23 conspiracy to distribute heroin; that is, from a time unknown

24 to the grand jury but at least by in or about June, 2001, and

25 continuing thereafter, that in Lawrence, Haverhill, and

1    elsewhere in the District of Massachusetts, that you and

2    Jason Brillon did knowingly and intelligently conspire and

3    agree together, and with persons known and unknown to the

4    grand jury, to possess with intent to distribute and to

5    distribute quantities of heroin in violation of federal law?

6    Do you plead guilty to that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Now, the grand jury further alleges

9    that the conspiracy involved at least 100 grams of a mixture

10    or substance containing a detectable amount of heroin.  Do

11    you plead guilty to that?

12              THE DEFENDANT:  No.

13              THE COURT:  And that is the issue upon which you

14    are waiving the Apprendi issue, Apprendi claim; is that

15    right?

16              THE DEFENDANT:  Yes.

17              THE COURT:  And you understand that I will hold a

18    hearing on that point?  Do you understand?

19              THE DEFENDANT:  Yes.

20              THE COURT:  All right, so I think I've taken all

21    the pleas.  I find that there's a substantial basis in fact

22    concerning each of these.  This is about your last chance

23    because I'm about to accept this plea.  Do you have any other

24    questions for your attorney or me?

25              THE DEFENDANT:  No.

```
 1              THE COURT:  No?

 2              THE DEFENDANT:  (The defendant nodded negatively.)

 3              THE COURT:  You've got to say something.

 4              THE DEFENDANT:  No.

 5              THE COURT:  Fine, all right.  Just the Court

 6   Reporter has to get it down.  You can't shake your head.  Do

 7   you plead guilty knowingly, freely, and voluntarily to each

 8   of these counts?

 9              THE DEFENDANT:  Yes, I do.

10              THE COURT:  I find the plea is knowing and

11   voluntary.  It's supported by an independent basis in fact

12   concerning each of the essential elements on all of the

13   counts, with the exception of one we have not addressed, the

14   criminal forfeiture count, and, two, we have not addressed

15   drug amount yet.  So otherwise I take the plea.

16              Now, this sounds like a serious evidentiary

17   hearing.  What are you thinking about in terms of time?

18              MR. LEVITT:  I actually don't think it will be a

19   significant evidentiary hearing.  I mean, I think --

20              MR. RAPPAPORT:  In terms of time?

21              MR. LEVITT:  In terms of time.

22              THE COURT:  Why?  Who do you plan --

23              MR. LEVITT:  I think what we would do is -- and

24   some of the information will be -- the information will be

25   provided to Probation.
```

```
 1                    THE COURT:  But I don't take their word for it.
 2                    MR. LEVITT:  I understand, okay, so that will be
 3      laid out.  And I think we're talking about one or two --
 4      well, two or three witnesses on the government's part, but I
 5      don't anticipate it being a long amount of time.
 6                    THE COURT:  So like an afternoon?
 7                    MR. LEVITT:  I think an afternoon.
 8                    THE COURT:  Like an hour?  What are we talking
 9      about?
10                    MR. LEVITT:  I think an hour, depending on
11      cross-examination, maybe two.
12                    MR. RAPPAPORT:  I think we should maybe give it an
13      afternoon.  Just using the probable cause hearing as a gauge,
14      I think. . .
15                    THE COURT:  So who are these people?  Is this the
16      agent himself?  Is there an undercover agent?  Or are these
17      cooperating individuals?
18                    MR. LEVITT:  These will be cooperating witnesses
19      and witnesses who are aware of the defendant's drug
20      trafficking, either because they bought drugs from him or
21      witnessed it in other ways.
22                    THE COURT:  So you'll -- have you turned over all
23      the Brady and Giglio stuff to him in terms of --
24                    MR. LEVITT:  We have.  We'll go through it again to
25      make sure that we have everything.
```

```
 1              THE COURT:  Just make sure because my biggest
 2    issues, or at least the ones I hear about in these historical
 3    cases, is that it's not necessarily under the control of the
 4    U.S. Attorney's Office, but a lot of this information is
 5    under the control of the local and state law enforcement.
 6    And so then I get to the hearing, and something pops up that
 7    he hasn't heard about.  And I'm not blaming you, but, on the
 8    other hand, he has a right to have it.  I mean, we've all
 9    been there and done that, so --
10              MR. LEVITT:  We will go through that.
11              THE COURT:  Who is it?  Whose investigation is it?
12              MR. LEVITT:  It's FBI.
13              THE COURT:  From the get-go?  It wasn't Essex
14    County?
15              MR. RAPPAPORT:  It involves the Essex County Drug
16    Task Force as well, your Honor.
17              MR. LEVITT:  Well, it's an FBI Gang Task Force that
18    utilizes a lot of local law enforcement in Essex County.
19              THE COURT:  My only point is, to the extent that
20    you've got three people who are cooperators rather than
21    undercover agents, who might have criminal records and deals
22    with local and State Police, I would go back and make sure
23    you get it.  It's the biggest area of controversy because
24    you'll say, "I didn't know," and he'll say, "But it's still
25    the government," and so -- right?
```

```
 1            MR. RAPPAPORT:  Absolutely.

 2            THE COURT:  That's a repartee.  So just make sure

 3   you double-check that.  Other than that, I'll assume that we

 4   can hold a two- or three-hour evidentiary hearing to satisfy,

 5   unless you think there's going to be more to it.  Do you have

 6   witnesses?

 7            MR. RAPPAPORT:  I'm not going to have any

 8   witnesses, your Honor, or should I say Mr. Mercado is not

 9   going to have any witnesses.

10            THE COURT:  So when do you want to do this?

11            THE CLERK:  July 14 at 2:00 p.m., the whole

12   afternoon.

13            MR. RAPPAPORT:  I've got to check with the boss,

14   but --

15            THE COURT:  That's why I ask because the first two

16   weeks of July are tough weeks.  Some people go away.

17            MR. RAPPAPORT:  Well, I should have it in my book,

18   like, when my wife has scheduled us, but I think I'm okay.  I

19   think I'm okay that week.

20            THE COURT:  The one thing that drives me nuts is

21   when people let me know two days before if I've blocked off

22   an afternoon.

23            MR. LEVITT:  Your Honor, I actually have a trial

24   starting that day.  I would be available in the afternoon.

25            THE COURT:  Is it a real trial?
```

1           MR. LEVITT:  It's a real trial.

2           THE COURT:  You're sure?

3           MR. LEVITT:  Well, I really think so.

4           THE COURT:  All right, do you want to do it the

5    following week?

6           MR. RAPPAPORT:  I'm available on the 21st.

7           THE COURT:  Is that doable for us?

8           THE CLERK:  Yes, yes.  Yes, it is, as far as I

9    know.

10          THE COURT:  Okay.

11          MR. LEVITT:  Thank you, your Honor.

12          MR. RAPPAPORT:  Thank you, your Honor.

13          THE CLERK:  Court is in recess.

14          (Adjourned, 4:40 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )

5

6

7

8          I, Lee A. Marzilli, Official Federal Court

9  Reporter, do hereby certify that the foregoing transcript,

10 Pages 1 through 31 inclusive, was recorded by me

11 stenographically at the time and place aforesaid in

12 Criminal No. 02-10257-PBS, United States of America Vs. Elvin

13 Mercado, and thereafter by me reduced to typewriting and is a

14 true and accurate record of the proceedings.

15          In witness whereof I have hereunto set my hand this

16 31st day of October, 2004.

17

18

19

20

21

22         _____
           LEE A. MARZILLI, CRR
23         OFFICIAL FEDERAL COURT REPORTER

24

25