UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELVIN MERCADO,<br><br>　　　　Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 04-11653-PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PETITIONER'S
SECOND AMENDED MOTION UNDER 28 U.S.C. § 2255**

　　　Petitioner Elvin Mercado submits this Reply Memorandum in further support of his motion for relief pursuant to 28 U.S.C. § 2255.

**INTRODUCTION**

　　　When Mr. Mercado's prior convictions were set aside, this Court agreed that he should be resentenced. The only barrier was Mr. Mercado's plea agreement, by which he supposedly "waived" his right to bring this motion under 28 U.S.C. § 2255. That purported "waiver," however, has *no* effect, as the Court failed to "address the defendant personally in open court" during his plea colloquy, as required by Fed. R. Crim. R. 11(b)(1)(N), to confirm that the waiver of Mr. Mercado's right to collaterally attack his sentence was knowing and voluntary. Because the plea agreement waiver is not valid, Mr. Mercado must now be resentenced.

## ARGUMENT

In determining whether Mr. Mercado's petition should be allowed to proceed, the government agrees that Rule 11(b)(1)(N) and the First Circuit case of *United States v. Teeter*, 257 F. 3d 14 (1st Cir. 2001), govern. Under Rule 11 and *Teeter*, Mr. Mercado's waiver of his right to collaterally attack his sentence should be deemed unenforceable.[1]

### I. THE FIRST CIRCUIT APPLIES A THREE-PART "KNOWING AND VOLUNTARY" TEST TO DETERMINE THE ENFORCEABILITY OF COLLATERAL ATTACK WAIVERS

In *Teeter*, the First Circuit outlined a three-part test to determine whether a defendant knowingly and voluntarily had agreed to a plea agreement's waiver provision.[2] First, a court must ensure that the plea agreement "contain[ed] a clear statement elucidating the waiver and delineating its scope." *Teeter*, 257 F.3d at 24. Second, a court must examine the transcript of the plea hearing to ascertain whether the court's interrogation inquired specifically as to the waiver, as required by Rule 11(b)(1)(N). *Id.* (*citing* Fed. R. Crim. P. 11(b)(1)(N), enacted as Fed. R. Crim. P. 11(c)(6)). If a court fails to discharge its duty to inquire specifically into a defendant's understanding of a collateral attack waiver, the waiver is unenforceable unless "the record shows . . . [that] the defendant . . . understood the full significance of the waiver." *Id.*

---

[1] Though *Teeter* addressed an appeal waiver, the First Circuit subsequently applied the same test set forth in *Teeter* to a collateral attack waiver. *See United States v. Ciampi*, 419 F.3d 20, 25-27 (1st Cir. 2005). All other circuit courts to address the issue likewise have held that collateral attack and appeal waivers should be treated identically. *See, e.g., United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001) ("[T]he same exceptions to the waiver of the right to appeal . . . [are] available to the waiver of the right to collateral attack."); *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) ("We see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context."); *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Our reasons for upholding the voluntariness requirement in the context of waivers of direct appeal rights apply with equal force to the right to bring a collateral attack pursuant to § 2255.").

[2] The government refers to *Teeter* as setting forth a two-part test. *See* Opposition, pp. 3-4. While the analysis is not substantially different, the First Circuit considers *Teeter* as setting forth a three-part test. *See United States v. Gil-Quezada*, 445 F.3d 33, 36 (1st Cir. 2006) (applying *Teeter's* "three-pronged test" to an appeal waiver).

Third, even if a court finds that a waiver was knowing and voluntary, it should not enforce the waiver if doing so would result in a "miscarriage of justice." *Id.* at 25-26; *see also Gil-Quezada*, 445 F.3d at 37-38.

Here, the Court should find the § 2255 waiver in Mr. Mercado's plea agreement to be invalid and unenforceable under *Teeter*'s three-part test.

## II. THE PLEA AGREEMENT'S PURPORTED "WAIVER" OF MR. MERCADO'S RIGHT TO COLLATERALLY ATTACK HIS SENTENCE IS INVALID AND UNENFORCEABLE

### A. Even If The Plea Agreement's Language Concerning "Collateral Rights" Was Clear To An Attorney, It Was Not Clear To Mr. Mercado, Nor Was It Explained To Him By His Attorney

The government argues that "[t]here is little doubt that the plea agreement in this case satisfies the first prong of the *Teeter* test," because the plea agreement "'contains a clear statement elucidating the waiver and delineating its scope' . . . ." *See* Opposition to Defendant's Second Amended Motion ("Opposition") (Docket No. 41), p. 4. The government is correct in that the language is clear to an attorney who understands "collateral attacks." Such language, however, was not clear to a defendant such as Mr. Mercado, who had little or no education at the time he executed the plea agreement. *See* Presentence Report ("PSR"), Ex. A to Memorandum in Support of Second Amended Motion ("Second Amended Memorandum") (Docket No. 33), p. 43. Indeed, unlike a right to appeal, which is relatively simple and self-explanatory, the plea agreement's language concerning the waiver of any "collateral challenge" is arcane and likely familiar only to experienced criminal lawyers. *See* Plea Agreement, Ex. A to Opposition, p. 3.

Moreover, the government ignores Mr. Mercado's ineffective assistance claim that is still pending before this Court. *See* Amended Motion (Docket No. 23), p. 4. Indeed, the unrebutted evidence is that prior counsel was constitutionally ineffective in failing to inform Mr. Mercado

3

as to the scope and import of the plea agreement. *See* Affidavit of Elvin Mercado ("Mercado Aff."), Ex. C to Memorandum in Support of Amended Motion ("Amended Memorandum") (Docket No. 24). Such ineffective assistance prevented Mr. Mercado from knowingly and voluntarily agreeing to the plea agreement, rendering the entire agreement, including the collateral attack waiver, invalid. *See United States v. Stell*, 2006 WL 3392070, *1 (6th Cir. 2006) ("If the plea agreement is held to be unenforceable . . . then the appellate waiver, as part of the plea agreement, likewise falls.").[3]

### B. The Court's Failure To Comply With Rule 11(b)(1)(N) Invalidates The Plea Agreement's § 2255 Waiver

Regardless whether the plea agreement's language was sufficiently clear to satisfy the first part of the *Teeter* test, it is undisputed that the Court failed to make a specific inquiry as to the waiver of Mr. Mercado's right to collaterally attack his sentence as required by Rule 11(b)(1)(N). Indeed, neither the Court nor the government ever mentioned, much less explained, the § 2255 waiver to Mr. Mercado during his plea colloquy. *See* Rule 11 Hearing Transcript, Ex. D to Amended Memorandum.

Because the Rule 11 colloquy was deficient, the Court can only enforce the waiver if it was "manifestly clear from the record" that Mr. Mercado understood the "full significance of the waiver." *United States v. Bushert*, 997 F.2d 1343, 1351-52 (11th Cir. 1993); *see also United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996) (record must "clearly demonstrate[]" that waiver was knowing and voluntary). There is *nothing* in the record, however, that demonstrates

---

[3] *See also United States v. Edgar*, 348 F.3d 867, 869 (10th Cir. 2003) (waiver is unenforceable if it "is the product of ineffective assistance of counsel"); *United States v. Branston*, 2000 WL 839963, *2 (2d Cir. 2000) (unpublished) ("[A] valid waiver of the right to appeal might be rendered moot if the Agreement containing it is unenforceable."); *DeJesus v. United States*, 2001 WL 34008810, *5-6 (S.D.N.Y. 2001) (attorney's ineffective advice to defendant to enter into plea agreement could render plea agreement's § 2255 waiver unenforceable).

Mr. Mercado's understanding of the § 2255 waiver. To the contrary, Mr. Mercado's sworn testimony regarding the lack of effective assistance he received with regard to his plea agreement affirmatively establishes his *lack* of such an understanding. *See* Mercado Aff.

The government argues that the Court's brief inquiry regarding Mr. Mercado's purported reading and understanding of the plea agreement made it "manifestly clear" that Mr. Mercado knowingly and voluntarily agreed to waive his collateral attack rights. Opposition, pp. 5-7.[4] Notably, the First Circuit has not addressed this specific issue, but the majority rule is that inquiring as to a defendant's understanding of the plea agreement as a whole *fails* to confirm a defendant's knowing and voluntary assent to specific waivers contained therein. For example, the trial judge in *United States v. Arellano-Gallegos*, 387 F.3d 794 (9th Cir. 2004), asked the defendants "only the general questions whether they had read and understood their" plea agreements and "made no specific reference to the [appeal] waiver." *Id.* at 797. In that light, the Ninth Circuit found there was "no evidence in the record that would demonstrate that [the defendant] knew he was waiving the right to appeal." *Id.* Indeed, the Ninth Circuit concluded that the trial court's brief inquiry constituted a "wholesale omission" of its Rule 11(b)(1)(N) duties. *Id.* The Ninth Circuit accordingly refused to enforce the waiver. *Id.*

Similarly, in *United States v. Blackwell*, 199 F.3d 623 (2d Cir. 1999), the Second Circuit refused to enforce an appeal waiver where the trial court confirmed that the defendant had read

---

[4] The government cites *United States v. Edgar*, 348 F.3d 867 (10th Cir. 2003), to argue that, contrary to the weight of the law, the Court's brief inquiry into Mr. Mercado's reading and understanding of the plea agreement invalidated the § 2255 waiver. Opposition, pp. 12-13. The defendant in *Edgar*, however, was a "small business owner and a high school graduate with some college education." *Edgar*, 348 F.3d at 873. Mr. Mercado, on the other hand, has had a history of mental health problems and had not graduated high school at the time of his plea. *See* PSR, pp. 36-43. *Edgar*, therefore, is distinguishable from this case.

5

and understood the plea agreement, but the court did not inquire as to the specific appeal waiver it included. *Id.* at 625. The Second Circuit held that, "as a minimum, before accepting a guilty plea each district judge must personally inform the defendant of each and every right and other matter set out in Rule 11. Otherwise the plea must be treated as a nullity." *Id.*; *see also Levine v. United States*, 382 F. Supp. 2d 256, 259 (D. Mass. 2005) (Gorton, J.) (holding that defendant's "waiver of his right to appeal . . . [could not] be enforced" because plea colloquy did not specifically address waiver).

The reasoning underlying these two cases is sound. A general inquiry as to whether a defendant had reviewed the plea agreement as a whole would not provide any guarantee that the defendant understood the actual rights that he was surrendering, particularly since most defendants focus on the government's concessions and impending sentencing hearing. Moreover, if a general discussion of a plea agreement were to be deemed sufficient, the specific inquiries required under Rule 11(b)(1) would be rendered superfluous.[5]

### C.  Enforcing The Waiver Would Result In A "Miscarriage Of Justice"

Even if the Court were to find the waiver enforceable under the first two prongs of the *Teeter* analysis, it should refuse to enforce it, because doing so would result in a "miscarriage of justice." *See Teeter*, 257 F.3d at 25-26. Under *Teeter*, a court cannot enforce a waiver if doing so would result in a "miscarriage of justice." *Id.* Determining whether a miscarriage of justice would occur requires considering:

---

[5] The government also argues that Mr. Mercado's guilty pleas in state court as a 17-year-old demonstrate his understanding of the provision in his plea agreement waiving his right to collaterally attack his sentence in federal court thirteen years later. Opposition, pp. 9-11. Mr. Mercado's challenge to his state court guilty pleas, however, did *not* involve a collateral attack waiver or a deficient plea hearing colloquy. *See* Motion for a New Trial, Ex. C to Second Amended Memorandum. The government's suggestion that Mr. Mercado's experience in state court as a juvenile should substitute for the complete omission of a Rule 11(b)(1)(N) inquiry in federal court is thus without merit.

> the clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Id.*

The legal "error" here is not in dispute: given that his prior convictions have been set aside, Mr. Mercado should not be sentenced as a career offender. *See* Second Amended Memorandum. Absent the plea agreement's waiver, Mr. Mercado would be resentenced as a non-career offender, a contention that the government does not oppose. *See* Opposition. Indeed, he most likely would be released forthwith, as he has already served more than his guideline sentence. If the error stands, Mr. Mercado remains in prison for at least another ten years; if the error is corrected, Mr. Mercado regains his freedom and returns to his family.[6] Thus, allowing this error — *i.e.*, Mr. Mercado's improper sentencing as a "career offender" — to stand would result in a miscarriage of justice. *See United States v. Aquino-De La Rosa*, 139 Fed. Appx. 298, 299-300 (1st Cir. 2005) (non-precedential) (deficient Rule 11(b)(1)(N) colloquy would work a miscarriage of justice "especially since" underlying claim had "reasonable probability" of success); *United States v. Soto-Cruz*, 449 F.3d 258, 261-62 (1st Cir. 2006) (no miscarriage of justice because underlying claim was meritless); *Paradis v. United States*, 2005 WL 2099901, *3 (D. Me. 2005) (same).[7]

---

[6] On the other hand, correcting the error would not adversely impact the government. The typical benefit of a waiver, "the automatic cutoff of debate" and a quick end to litigation, *Teeter*, 257 F.3d at 26, does not exist here. If the Court corrects the error, a brief sentencing hearing ends the case. If the Court does not correct the error, the remaining claims in this case, which are significant, must be resolved and would require at least an evidentiary hearing.

[7] It also would be fundamentally unfair to enforce the waiver, given that it appears that the government breached the plea agreement by recommending an offense level of 31 at the sentencing hearing, as opposed to an offense level of 29 as agreed upon in the plea agreement. *See* Sentencing Hearing Transcript, Day 2, pp. 112-13, attached hereto as Ex. A; Plea Agreement, pp. 2-3 (parties agree that offense level is 32 reduced by three levels for acceptance of responsibility).

### III. THE COURT SHOULD RESENTENCE MR. MERCADO IMMEDIATELY

The government requests that the Court delay this proceeding "until the state court matter is resolved." Opposition, p. 14. The government's request, however, is now moot as Lowell District Court Judge Jarasitis has already denied the government's motion for reconsideration. *See* Order, dated January 23, 2007, attached hereto as Ex. B.

Mr. Mercado was unlawfully sentenced as a career offender: he should not be forced to remain in prison one day longer than absolutely necessary. The Court, therefore, should resentence Mr. Mercado as soon as possible and allow him to regain his freedom.

### CONCLUSION

For the foregoing reasons, Mr. Mercado respectfully requests that the Court grant his Second Amended Motion under § 2255 and proceed to resentence him forthwith.

Respectfully submitted,

 /s/ Roberto M. Braceras
Roberto M. Braceras  (BBO# 566816)
Robert J. Durbin  (BBO# 658224)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: January 30, 2007

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 30, 2007.

 /s/ Roberto M. Braceras

LIBA/1757671.4